THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. RICHARD BENES, DEFENDANT-APPELLANT.

Presented October 4, 1954—Decided November 8, 1954.

390

Mr. *Richard Benes,* appellant, *pro se.*

Mr. *Harold Kolovsky,* attorney for respondent.

The opinion of the court was delivered by

WILLIAM J. BRENNAN, JR., J.   A Bergen County grand jury indicted Benes under an indictment of two counts, the first charging burglary and the second larceny of goods of the value of $500.   He pleaded guilty to the larceny count, a high misdemeanor, *R. S.* 2:145–2, now *N. J. S.* 2A:119–2, for which the maximum prison sentence is seven years, *R. S.* 2:103–5, now *N. J. S.* 2A:85–6.   On May 7, 1948 he was placed on five years' probation by the Bergen County Court.

On November 2, 1949 he pleaded guilty to charges of violation of probation and his probation was revoked.   On November 9, 1949, pursuant to *R. S.* 2:192–1.2, now *N. J. S.* 2A:164–2, he was ordered to New Jersey State Hospital at Trenton for pre-sentence physical and mental examination, study and observation.   He was returned to the Bergen County Court over four months later, on March 29, 1950, and was sentenced for a term from one to seven years in the State Prison.

After a year, on March 14, 1951, Benes was paroled; but after another year, on April 22, 1952, his parole was revoked and he was returned to prison when he was convicted of contempt of an order directing him to provide support for his children entered January 10, 1952 in the Bergen County Juvenile and Domestic Relations Court.   His appeals from the support order were dismissed by the Appellate Division on November 18, 1953 as out of time.   Those appeals were assigned Docket No. A–52–53.

Benes initiated the instant proceeding by petition filed September 10, 1953 in the Superior Court, Law Division. The petition, prosecuted *pro se* and confusingly styled both as an application for a writ of *habeas corpus* and a motion to correct illegal sentence, seeks a judgment declaring his sen-

tence of from one to seven years to be wholly illegal and void and directing his immediate release from the prison. The petition was dismissed October 5, 1953 by order entered in the Law Division. An appeal taken by Benes to the Appellate Division on October 15 following was assigned Docket No. A–78–53. The briefs and the *per curiam* opinion of the Appellate Division affirming the Law Division refer to the appeal as Docket No. A–52–53. We are satisfied that this is a mere inadvertence but, upon Benes' representations of possible confusion of his appeals, have treated his application in this court as a petition for certification to review the Appellate Division judgment, and have granted certification.

Benes has filed several briefs here and in the courts below and we have given consideration to the arguments advanced in all of them without limitation to the points briefed here.

■ The commitment under which Benes was received at the prison from Bergen County erroneously recites that he entered a plea of guilty to the burglary count. This is a mere clerical error which can and should be corrected to conform the fact to the judgment record and is not to be taken, as Benes argues, to evidence his confinement for a crime of which he was not convicted.

Benes was represented by assigned counsel at the time he pleaded guilty to the larceny charge. Eighteen months later when he appeared to answer the charge of violation of probation he expressed dissatisfaction with the services of counsel, who thereupon applied for and was allowed leave to withdraw as his attorney. Benes now argues that the assigned attorney inadequately represented him at the time of his plea of guilty to the larceny count and, further, that the trial judge should have provided other counsel after allowing the assigned attorney to withdraw. It is doubtful whether these points may be raised in this proceeding, *In re Caruso*, 10 *N. J.* 184 (1952), but we are satisfied from our examination of the record that they are at all events without merit.

■■ Benes was sentenced about two years after he pleaded guilty to the larceny count and over four months after his probation was revoked. He argues that the sentence is there-

fore void because not imposed, as provided by *R. S.* 2:192–1, within 90 days after he pleaded guilty to the commission of the crime. There is no merit in the argument. His probation suspended the imposition of sentence and upon his conviction for violation of probation the court had authority under another statute, *R. S.* 2:199–4, now *N. J. S.* 2A:168–4, to impose the sentence which might originally have been imposed. *Adamo v. McCorkle*, 13 *N. J.* 561 (1953). The four months which elapsed thereafter was the time required at the State Hospital to complete the pre-sentence examination and report desired by the judge to aid him in determining a proper sentence. Assuming the effectiveness of the statutory requirement for imposition of sentence within 90 days despite the conflict with *Rule* 2:7–10(*c*), now *R. R.* 3:7–10(*c*), providing that "sentence shall be imposed without unreasonable delay" (the statute has not been carried into the revision of *Title* 2), the requirement was directory and not mandatory. *Ex parte Hardman*, 131 *N. J. L.* 257 (*Sup. Ct.* 1944). There is no evidence to show that Benes' stay at the hospital was unreasonably or unnecessarily prolonged; and sentence was promptly imposed after he was returned to the Bergen County jail.

This brings us to consideration of Benes' main argument in support of his contention that his sentence is wholly void. He argues that the time spent at the State Hospital was a fully executed sentence barring another sentence for his offense. The short and dispositive answer to this contention is that he was not in the hospital pursuant to a sentence imposed but under an order expressly authorized by *R. S.* 2:192–1.2 "before imposing sentence" for an examination of his mental and physical condition. The statute provides:

"Every judge, before imposing sentence upon a defendant, may order an examination of the mental and physical condition of such defendant and an investigation of his environment by a clinic organized in the county wherein such sentence is to be imposed, or may send the defendant to an appropriate institution within this state for examination, study and classification."

■ The purpose of this statute, manifestly intended as much for the benefit of the accused as for the protection of society, is to arm the sentencing judge with information of the accused's mental and physical condition or environmental factors which might have a significant bearing upon the judge's decision whether penal custody is required and for what time within the statutory limits and in what institution. That the sentencing judge ordered the examination for just such purpose and utilized the report of the examination in that wise is made abundantly clear in the transcript of the proceedings when the sentence was imposed. The judge paraphrased the hospital report as expressing the opinion that there was nothing mentally wrong with Benes, that "the cause of whatever trouble you have is chronic alcoholism." The judge in originally placing him on probation had humanely sought to afford Benes opportunity to mend his ways and become a responsible citizen, and had ordered the examination to discover if there was a mental or physical condition which would explain the failure of the effort:

"I put you on probation hoping you could straighten yourself out and it hasn't worked out. So I am going to send you to jail now for a sufficient length of time to compel you to stay away from alcohol and if you have any wisdom left at all you will utilize this time to reflect and get a hold on yourself so that when you leave prison you will have a chance of leading a decent life. * * * I think it is better the way I worked it out, a year in jail, a year away from alcohol."

The appellant was a draftsman commanding substantial earnings. The indictment was for burglary of the plant and larceny of the goods of an industrial corporation named Products Designs Corporation. The record does not show that he had any criminal record otherwise.

■ In light of the statute's purpose a hearing was not required before the making of the order, nor was the accused entitled to a copy of the report or to examine the members of the hospital staff who prepared it. It follows that there is no merit in Benes' subsidiary arguments that he was denied due process and confrontation of the witnesses against

him, even accepting as factually true what has no support in the record, except his assertions, that the sentencing judge conferred privately with a representative of Benes' wife concerning the possibility of committing him to a mental institution and that he was not allowed to see the hospital report or to question those who prepared it.

The trial judge did not direct that Benes was to be given credit upon the minimum and maximum of his one to seven years sentence for the time he was at the hospital. *Rule* 2 :7–10(*g*), now *R. R.* 3 :7–10(*g*), providing, "In all custodial sentences the prisoner shall receive credit on the term imposed for any time he may have served in custody between his arrest and the imposition of sentence," was not made effective until almost three years later, on January 1, 1953. We can find no basis upon which this court should at this time allow Benes the benefit of the rule by ordering the giving of such credit, assuming, without deciding, that time spent for the purpose of a pre-sentence examination pursuant to *R. S.* 2 :192–1.2, now *N. J. S.* 2*A* :164–2, is to be considered time "served in custody" under the rule. A judgment of sentence is not ordinarily revisable by an appellate court where the sentence is within authorized statutory limits. *In re Lewis,* 11 *N. J.* 217 (1953). There is no showing here to bring the case outside the general rule. Indeed, such evidence as there is, this in a letter exhibit attached to Benes' petition, states that the judge (who has since left the bench) "wrote you in May 1950 [this is within two months after sentence was imposed] that the time you spent in confinement awaiting trial would not be credited against your sentence."

Affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, BURLING, JACOBS and BRENNAN—5. •

*For reversal*—Justices HEHER and WACHENFELD—2.