STATE OF CONNECTICUT *v.* EDWARD PARKER
(SC 18432)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.

Argued January 14—officially released April 27, 2010

*Glenn W. Falk*, special public defender, with whom, on the brief, was *Elliot Morrison*, law student intern, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, was *Scott J. Murphy*, state's attorney, for the appellee (state).

### Opinion

KATZ, J. The sole issue in this appeal is whether the trial court properly dismissed the motion of the defendant, Edward Parker, seeking to correct his sentence, which he claimed had been imposed in an illegal manner because: (1) he had not been given an opportunity to review the presentence investigation report (presentence report), thereby denying him an opportunity to address inaccuracies and mistakes in the report; and (2) he had been deprived of his constitutional right to the effective assistance of counsel because his attorney

failed to review the presentence report with him and neglected to bring inaccuracies and mistakes in that report to the sentencing court's attention. We conclude that the defendant's claims do not fall within the limited circumstances under which the trial court has jurisdiction to correct a sentence imposed in an illegal manner and, therefore, we affirm the trial court's decision.

The record reveals the following undisputed facts and procedural history. The defendant was charged by way of substitute information with robbery in the first degree and murder. The defendant thereafter entered a plea under the *Alford* doctrine[1] to the charge of murder, an offense that carries a mandatory minimum sentence of twenty-five years imprisonment. See General Statutes §§ 53a-35a and 53a-54a. Under the terms of the plea agreement, the defendant was to be sentenced to a term of imprisonment of thirty years. At the commencement of the plea hearing, the defendant stated that he had something to say to the court. The trial court, *Iannotti, J.*, informed the defendant that, after canvassing him and accepting his plea, the court would continue the case for sentencing pending receipt of the defendant's presentence report, and that the sentencing proceeding would be the proper time for the defendant to make any statements to the court. Thereafter, the court canvassed the defendant and accepted his plea. It then noted for the record that a presentence investigation was to be conducted and the case was scheduled for sentencing on a specified date. Later that same day, after realizing that it had omitted certain questions from its canvass of the defendant, the trial court brought the parties back into court and advised the defendant of

---

[1] "Under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970) . . . the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Fowlkes*, 283 Conn. 735, 736 n.1, 930 A.2d 644 (2007).

additional consequences of his plea. One such conse-
quence was that the only circumstance under which
the court would permit the defendant to withdraw his
plea was if the court decided, after reading the presen-
tence report, that it had to impose a term in excess of
thirty years imprisonment. The defendant acknowl-
edged that he understood this condition.

Thereafter, a probation officer attempted to interview
the defendant for purposes of the presentence report.
The defendant informed the probation officer that he
did not wish to discuss anything about his case because
he planned to obtain different counsel, open his case
and take his case to trial.

Subsequently, the trial court held the sentencing hear-
ing. At the commencement of the hearing, the defen-
dant's counsel, Stephen Gionfriddo, informed the court
that he had been advised by the defendant and the
defendant's mother, Rose Parker, that they no longer
wanted him to represent the defendant.[2] The defendant
affirmed that he "was not happy with [his] lawyer" and
that he was "pretty close" to retaining another attorney.
The court noted that it had received the defendant's
presentence report, which set forth the defendant's
statement to that effect to the interviewing probation
officer, and again explained to the defendant the effect
of his previous plea canvass and that he would be per-
mitted to withdraw his plea only if the presentence
report convinced the court to impose a sentence in
excess of thirty years imprisonment. The court rejected
Gionfriddo's suggestion that the defendant should be
allowed to have a different attorney represent him at
sentencing, noting that the defendant had agreed to a
plea under which there was an agreed sentence of thirty

[2] It appears from the record that the defendant was twenty-one years old
at the time he entered his guilty plea and that his mother had paid for
Gionfriddo's services.

years imprisonment, with no right to argue for a lesser sentence. The court did, however, allow the defendant and his mother to address the court, both of whom remarked upon the reasons for their dissatisfaction with Gionfriddo's representation and the resulting plea.

The court then turned to the issue of sentencing. The court permitted the state's attorney, the girlfriend and sister of the victim and Gionfriddo to make statements, each of whom expressed reasons why the thirty year sentence was appropriate. The court took a moment to read letters submitted by other members of the victim's family and then asked the defendant if he had anything else to say. The defendant turned to the victim's family and expressed remorse for their loss, but asserted that he had not killed the victim. Thereafter, the court stated that, in light of everything it had read and the facts of the case, it intended to follow the agreed upon recommendation and, accordingly, imposed a sentence of thirty years imprisonment. The defendant subsequently unsuccessfully pursued an appeal from his judgment of conviction and other postconviction relief relating to the trial court's acceptance of his guilty plea and its subsequent refusal to allow him to withdraw that plea at the sentencing proceeding despite his expressions of dissatisfaction with his counsel. See *State* v. *Parker*, 67 Conn. App. 351, 786 A.2d 1252 (2001) (appeal), cert. denied, 281 Conn. 912, 916 A.2d 54 (2007); *Parker* v. *Commissioner of Correction*, 83 Conn. App. 905, 853 A.2d 652 (2004) (habeas relief), cert. denied, 281 Conn. 912, 916 A.2d 54 (2007).[3]

In September, 2007, the defendant filed a pro se motion to correct an illegal sentence pursuant to Prac-

---

[3] In April, 2005, the defendant also filed a pro se motion to correct an illegal sentence relating to his guilty plea, which the trial court, *Iannotti, J.*, denied in May, 2005.

tice Book § 43-22.[4] Pursuant to a request therein, in accordance with this court's holding in *State* v. *Casiano*, 282 Conn. 614, 627–28, 922 A.2d 1065 (2007), the trial court, *Alexander, J.*, appointed counsel to represent the defendant.[5] In a subsequent motion to correct filed by his counsel in December, 2007, the defendant claimed that he had been deprived of an opportunity to review and correct inaccuracies in the presentence report and had been deprived of his constitutional right to effective assistance of counsel at the sentencing proceeding. Prior to a hearing on the defendant's motion, the trial court informed the parties that it questioned whether it had jurisdiction over the defendant's claims and, therefore, it determined that the hearing would be limited to that threshold issue.

At the hearing, the court permitted the defendant to make an offer of proof as to the specific basis of his claims. Testimony from the defendant and his mother adduced the following purported facts: shortly after the court had accepted the defendant's guilty plea, the defendant had informed Gionfriddo that he was not satisfied with Gionfriddo's representation and wanted to withdraw his guilty plea; the defendant had a pending habeas petition alleging that Gionfriddo had provided ineffective assistance of counsel relating to the guilty plea; the defendant had not seen the presentence report prior to the sentencing hearing; and Gionfriddo never

---

[4] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[5] In *State* v. *Casiano*, supra, 282 Conn. 627–28, this court held: "[A] defendant has a right to the appointment of counsel for the purpose of determining whether a defendant who wishes to file [a motion to correct an illegal sentence under § 43-22] has a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion."

had informed the defendant or his mother about the presentence investigation or the defendant's right to have an attorney present at that investigation, to review the presentence report or to address the court about any inaccuracies in that report. The defendant stated that he had seen the report for the first time just days before the hearing held pursuant to § 43-22. The lone reference to the contents of the presentence report was a one word affirmative response by the defendant to his counsel's question as to whether there were "issues" in the report that he would like to have corrected. The defendant's counsel argued that the record established that, "if there were corrections to be made or things to be raised concerning the [presentence report] it was never done."

The trial court then questioned how any of these deficiencies could have prejudiced the defendant, in light of the fact that he had no right under the plea agreement to argue for a lower sentence than the thirty year prison term agreed upon under the plea agreement. The defendant's counsel argued that no prejudice was required to be shown for purposes of a motion to correct, but suggested that prejudice could arise from having an inaccurate presentence report because: (1) that report is used after sentencing for making parole decisions and assigning security risk levels; and (2) a judge retains authority to impose any sentence within the permissible legal range and therefore the sentencing court arguably could have sentenced the defendant to less than the thirty year term of imprisonment. The state's attorney responded that the plea agreement had rendered the sentencing hearing a formality and, therefore, the defendant's claim of prejudice was not actually predicated on that hearing, but on the general principle that he has a right to an accurate presentence report because misinformation could have collateral consequences in the future.

Thereafter, the trial court issued a decision dismissing the defendant's motion to correct for lack of jurisdiction. Although the court acknowledged that a sentence is "imposed in an illegal manner" within the meaning of § 43-22 if the court has violated certain rights guaranteed a defendant during sentencing, it noted that "the sentencing was an agreed recommendation which would not have resulted in a different or lower sentence." The court concluded that the defendant's claim more appropriately should be raised in a habeas proceeding "because the claimed error is not related to the conduct of the sentencing court or the state, but rather the defense attorney's obligations." This appeal followed.[6]

On appeal, the defendant claims that the court properly had jurisdiction over the motion to correct because: (1) a sentence is imposed in an illegal manner if a defendant is denied a meaningful opportunity to review and comment on the information in the presentence report; and (2) a motion to correct is the proper vehicle to remedy the claimed defects because the interests of both the state and the defendant in an accurate presentence report, for inmate classification and other immediate purposes, cannot await a lengthy habeas proceeding for correction. We conclude that the trial court properly determined that it lacked jurisdiction over the defendant's motion.

I

The defendant claims that his sentence was imposed in an illegal manner. Because the present case provides this court's first opportunity to directly address this ground for correcting a sentence under § 43-22, and because there is a split of authority in the Appellate

_____

[6] The defendant appealed from the trial court's dismissal of his motion to the Appellate Court, and thereafter we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

Court as to whether trial courts have jurisdiction to correct sentences on this basis; see *State* v. *Dixson*, 93 Conn. App. 171, 176 n.6, 888 A.2d 1088 (recognizing split of authority but concluding that this court implicitly had acknowledged jurisdiction for specific claim in case before court), cert. denied, 277 Conn. 917, 895 A.2d 790 (2006); see also *State* v. *Koslik*, 116 Conn. App. 693, 706, 977 A.2d 275 (*Alvord, J.*, concurring), cert. denied, 293 Conn. 930, 980 A.2d 916 (2009); we begin with some background on this Practice Book provision.

"The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law." (Citation omitted.) *State* v. *Luzietti*, 230 Conn. 427, 431, 646 A.2d 85 (1994). "[A] generally accepted rule of the common law is that a sentence cannot be modified by the trial court . . . if the sentence was valid and execution of it has commenced.[7] *State* v. *Pallotti*, 119 Conn. 70, 74, 174 A. 74 [1934]; 15 Am. Jur. 128 § 473 [and] 130 § 474; [annot.], 168 A.L.R. 706, 707 [1947]." *Kohlfuss* v. *Warden*, 149 Conn. 692, 695, 183 A.2d 626, cert. denied, 371 U.S. 928, 83 S. Ct. 298, 9 L. Ed. 2d 235 (1962). In our earliest case to address the rationale for this rule, this court noted: "The reason for this rule has been variously assigned. According to one view, the rule rests on the principle of double jeopardy. According to another view, the rule is based on the proposition that the trial court has lost jurisdiction of the case. See cases cited in [annot., supra] 168 A.L.R. 709, 710." *Kohlfuss* v. *Warden*, supra, 695–96. This court since repeatedly has deemed this limitation jurisdictional. See *State* v. *Das*, 291 Conn.

---

[7] "At common law, the trial court's jurisdiction to modify or vacate a criminal judgment was also limited to the 'term' in which it had been rendered. *State* v. *Pallotti*, [119 Conn. 70, 74, 174 A. 74 (1934)]. Since our trial courts no longer sit in 'terms,' that particular common law limitation no longer has vitality in this state." *State* v. *Luzietti*, supra, 230 Conn. 432 n.6.

356, 362, 968 A.2d 367 (2009); *State* v. *Lawrence*, 281 Conn. 147, 153, 913 A.2d 428 (2007); *Cobham* v. *Commissioner of Correction*, 258 Conn. 30, 37, 779 A.2d 80 (2001); *State* v. *Luzietti*, supra, 431–32; *State* v. *Walzer*, 208 Conn. 420, 424–25, 545 A.2d 559 (1988); see also *State* v. *Nardini*, 187 Conn. 109, 123, 445 A.2d 304 (1982) ("[t]he only constitutional problem [arising from the legislative exceptions to the rule barring a court from exercising jurisdiction after execution of the sentence has begun] would be double jeopardy but even that problem would be obviated if the court exercised its jurisdiction at the initiation of the defendant").[8]

Because this jurisdictional limitation presupposes a *valid* sentence, it long has been understood that, if a court imposes an invalid sentence, it retains jurisdiction to substitute a valid sentence. See annot., supra, 168 A.L.R. 719; see also *In re Bonner*, 151 U.S. 242, 259–60, 14 S. Ct. 323, 38 L. Ed. 149 (1894) ("where the conviction is correct . . . there does not seem to be any good reason why jurisdiction of the prisoner should not be reassumed by the court that imposed the sentence in order that its defect may be corrected"); *State* v. *Lawrence*, 91 Conn. App. 765, 772, 882 A.2d 689 (2005) ("[u]nder the common law, the court has continuing jurisdiction to correct an illegal sentence"), aff'd, *State* v. *Lawrence*, supra, 281 Conn. 147; see also 24 C.J.S. 200–202, Criminal Law § 2138 (2006). As one court noted: "Where there is a conviction, accompanied by a void sentence, the court's jurisdiction of the case for the purpose of imposing a lawful sentence is not lost by the expiration of the term at which the void sentence was imposed. The case is to be regarded as pending

---

[8] Although the legislature has the power to create exceptions to the rule barring jurisdiction over valid sentences; *State* v. *Nardini*, supra, 187 Conn. 123; see *State* v. *Lawrence*, supra, 281 Conn. 153–54 (setting forth limited statutory exceptions); none of these exceptions is relevant in the present case.

until it is finally disposed of by the imposition of a lawful sentence. . . . The theory seems to be that where the original judgment is void, it, in form of law, accomplished nothing, there was no final disposition of the case, and the court's power was therefore unexercised . . . ." (Citation omitted; internal quotation marks omitted.) *De Benque* v. *United States*, 85 F.2d 202, 205–206 (D.C. Cir.), cert. denied, 298 U.S. 681, 56 S. Ct. 960, 80 L. Ed. 1402 (1936). In early cases, sentences subject to such correction varyingly were described as erroneous, illegal, irregular or so defective in manner of substance as to be unenforceable. 24 C.J.S., supra, pp. 200–202. Although courts generally construed this rule to permit correction of only void, but not voidable, sentences; see id.; some courts deemed the failure to provide rights essential to the fairness of the sentencing procedure as constituting a basis for vacating the sentence. See, e.g., *Williamson* v. *United States*, 265 F.2d 236, 239 (5th Cir. 1959) (lack of defendant's presence at resentencing); *McCormick* v. *State*, 71 Neb. 505, 506, 99 N.W. 237 (1904) (failure to ask defendant whether he had anything to say as to why judgment should not be imposed, in violation of statutory mandate); *Powell* v. *Commonwealth*, 182 Va. 327, 339–40, 28 S.E.2d 687 (1944) (lack of defendant's presence at sentencing).

In Connecticut, § 43-22 sets forth the procedural mechanism for correcting invalid sentences. As this court previously has noted: "Practice Book rules do not [however] ordinarily define subject matter jurisdiction. General Statutes § 51-14 (a) [provides that] . . . [s]uch rules shall not abridge, enlarge or modify any substantive right nor the jurisdiction of any of the courts. . . . Because the judiciary cannot confer jurisdiction on itself through its own rule-making power, § 43-22 is limited by the common-law rule that a trial court may *not modify a sentence if the sentence was valid and its execution has begun*." (Citation omitted; internal

quotation marks omitted.) *State* v. *Lawrence*, supra, 281 Conn. 155; see also *State* v. *Lawrence*, supra, 91 Conn. App. 773 (noting that § 43-22 "merely regulate[s] the procedure by which the court's jurisdiction may be invoked; [it does] not and cannot confer jurisdiction on the court to consider matters otherwise outside the court's jurisdiction").

Although this court had not defined the parameters of an invalid sentence prior to the adoption of § 43-22, the rules of practice are consistent with the broader common-law meaning of illegality, permitting correction of both illegal sentences and sentences imposed in an illegal manner.[9] See *United States* v. *Rico*, 902

[9] The genesis of the distinction drawn between illegal sentences and sentences imposed in an illegal manner arises from *Hill* v. *United States*, 368 U.S. 424, 82 S. Ct. 468, 7 L. Ed. 2d 417 (1962). At issue in that case was the rule of criminal procedure that permitted correction of "illegal" sentences. See Fed. R. Crim. P. 35. That rule, adopted in 1944, was a codification of the existing common law. See *Hill* v. *United States*, supra, 430 n.8; *Duggins* v. *United States*, 240 F.2d 479, 483 (6th Cir. 1957). In *Hill*, a closely divided court held that rule 35 did not provide a basis for relief when the claim was that the defendant had not been permitted to address the court prior to imposition of the sentence, in violation of rule 32 (a) of the Federal Rules of Criminal Procedure. *Hill* v. *United States*, supra, 429–30. The majority in *Hill* determined that "the narrow function of [r]ule 35 is to permit correction at any time of an illegal sentence, not to re-examine errors occurring at the trial or other proceedings prior to the imposition of sentence. The sentence in this case was not illegal. The punishment meted out was not in excess of that prescribed by the relevant statutes, multiple terms were not imposed for the same offense, nor were the terms of the sentence itself *legally or constitutionally invalid in any other respect.*" (Emphasis added.) Id., 430; see *United States* v. *Luepke*, 495 F.3d 443, 447 (7th Cir. 2007) (noting that, although "the right of allocution is deeply rooted in our legal tradition and an important, highly respected right, it is neither constitutional nor jurisdictional" [internal quotation marks omitted]).

The four dissenting justices in *Hill* had argued that "a sentence imposed in an illegal manner—whether the amount or form of the punishment meted out constitutes an additional violation of law or not—would be recognized as an 'illegal sentence' under any normal reading of the English language. And precisely this sort of common-sense understanding of the language of [r]ule 35 has prevailed generally among the lower federal courts that deal with questions of the proper interpretation and application of these [r]ules as an everyday matter. Those courts have expressed their belief that, even

F.2d 1065, 1067 (2d Cir. 1990) ("[t]he common law, and later the Federal Rules of Criminal Procedure, authorized the district court to correct illegal sentences or sentences imposed in an illegal manner"). In *State* v. *McNellis*, 15 Conn. App. 416, 443–44, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988), the Appel-

where the punishment imposed upon a defendant is entirely within the limits prescribed for the crime of which he was convicted, a sentence imposed in a prohibited manner—as, for example, a sentence imposed upon an absent defendant in violation of the command of [r]ule 43 [of the Federal Rules of Criminal Procedure] that a defendant be present at sentencing—is an 'illegal sentence' subject to correction under [r]ule 35." *Hill* v. *United States*, supra, 368 U.S. 432 (Black, J., dissenting).

In response, in 1966, rule 35 was amended to conform to the broader meaning of illegality advocated by the dissenting justices in *Hill* and the lower courts, permitting correction of both "illegal sentences" and "sentences imposed in an illegal manner." See *United States* v. *Mack*, 494 F.2d 1204, 1208 n.5 (9th Cir. 1974). Our rule of practice, § 43-22, adopted in 1976, was modeled on the then existing federal rule and the model rules of criminal procedure. See *State* v. *Pina*, 185 Conn. 473, 481 n.6, 440 A.2d 962 (1981); see also *State* v. *Lawrence*, supra, 91 Conn. App. 774 n.10 ("Connecticut law can be understood to follow either the version of rule 35 as it existed between 1966 and 1984 or the position of the dissent in *Hill*"). Federal rule 35 subsequently was amended in 1985, and currently trial courts only have the authority to vacate, set aside or correct sentences by way of a collateral attack under 28 U.S.C. § 2255.

Although our rule of practice is modeled on the version of the federal rule in effect between 1967 and 1984, we note two substantive differences. First, that version of the federal rule permitted motions to correct illegal sentences to be brought at any time, whereas motions to correct a sentence imposed in an illegal manner had to be filed within 120 days of sentencing or exhaustion of appellate remedies. See Fed. R. Crim. P. 35 (a) (1984). Under our rule, both grounds are subject to the same limits; originally, all motions to correct a sentence had to be filed within ninety days of final judgment and, after a 1983 amendment, all motions could be filed at any time. See *State* v. *Pina*, supra, 185 Conn. 481 n.6; *State* v. *Walzer*, 9 Conn. App. 365, 366, 518 A.2d 966 (1986), cert. denied, 202 Conn. 802, 519 A.2d 1207 (1987). Second, "[u]nlike the federal rules, which have been amended pursuant to congressional action; see *United States* v. *Cook*, 890 F.2d 672, 674–75 (4th Cir. 1989) [superseded by statute on other grounds *as stated in United States* v. *Fahm*, 13 F.3d 447, 453–54 (1994)]; our rules of practice are promulgated by the Superior Court of this state and, as such, cannot abridge, enlarge or modify any substantive right. See General Statutes § 51-14 (a)." *State* v. *Lawrence*, supra, 91 Conn. App. 773 n.8.

late Court aptly characterized the two types of illegality as follows: "An 'illegal sentence' is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. See 8A J. Moore, Federal Practice [2d Ed. 1984], para. 35.03[2], pp. 35-35 through 35-36. . . . Sentences imposed in an illegal manner have been defined as being 'within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . .' [Id.], pp. 35-36 through 35-37." This latter category reflects the fundamental proposition that "[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of sentence even if he may have no right to object to a particular result of the sentencing process." *Gardner* v. *Florida*, 430 U.S. 349, 358, 97 S. Ct. 1197, 51 L. Ed. 2d 393 (1977).

We must, however, add one qualification to the description in *McNellis*. That case relied on a federal treatise, which had enumerated those rights attendant to sentencing previously identified by the courts as mandated by federal due process or legal mandates under federal law intended to ensure fundamental fairness in sentencing. See *United States* v. *Luepke*, 495 F.3d 443, 447 (7th Cir. 2007) (noting that, although "the right of allocution is deeply rooted in our legal tradition and an important, highly respected right, it is neither constitutional nor jurisdictional" [internal quotation marks omitted]). Therefore, these enumerated examples would not encompass rights or procedures subsequently recognized as mandated by federal due process. See, e.g., *Walsh* v. *State*, 134 P.3d 366, 373–74 (Alaska

App. 2006) (holding that violation of rule set forth in
*Apprendi* v. *New Jersey*, 530 U.S. 466, 490, 120 S. Ct.
2348, 147 L. Ed. 2d 435 [2000], as applied in *Blakely* v.
*Washington*, 542 U.S. 296, 301, 124 S. Ct. 2531, 159 L.
Ed. 2d 403 [2004], constitutes illegal sentence); *Benge*
v. *State*, 945 A.2d 1099, 1102 (Del. 2008) (holding that
*Apprendi* violation constitutes sentence imposed in ille-
gal manner). Nor would those examples encompass
procedures mandated by state law that are intended to
ensure fundamental fairness in sentencing, which, if
not followed, could render a sentence invalid. There-
fore, the examples cited in *McNellis* are not exhaustive
and the parameters of an invalid sentence will evolve.
With these principles in mind, we turn to the specific
jurisdictional issue in the present case, over which we
exercise plenary review. *State* v. *Alexander*, 269 Conn.
107, 112, 847 A.2d 970 (2004).

II

As we previously have noted, in his motion to correct,
the defendant alleged that: (1) he had been deprived
of an opportunity to review his presentence report and
to address inaccuracies therein; and (2) Gionfriddo had
failed to review the presentence report with him or
to bring any inaccuracies in the report to the court's
attention. The defendant contends that the trial court
improperly failed to consider whether these allegations
were sufficient to establish a jurisdictional basis for
correcting a sentence imposed in an illegal manner.[10] He

---

[10] We note that the defendant challenges the trial court's conclusion that
dismissal of his motion to correct was required because "the sentencing
was an agreed [upon] recommendation which would not have resulted in
a different or lower sentence." It appears that the trial court determined
that a sentence cannot be imposed in an illegal manner when that sentence
conforms to a specified term in a plea agreement and the defendant did not
retain the right to argue for any lesser term. The defendant contends that
this conclusion is not compelled as a matter of law because, despite such
an agreement, a sentencing court has discretion to impose a lesser sentence
than the agreed upon term. See General Statutes § 51-195 (permitting applica-
tion for review of sentence by "[a]ny person sentenced on one or more

also contends that jurisdiction should be found because defendants must be provided a more expedient remedy than habeas proceedings to correct inaccurate information in presentence reports, even if the inaccuracies were caused by counsel error, because of the significance of such reports in decisions relating to incarceration and parole. We conclude that the trial court properly dismissed the defendant's motion.

The following general principles regarding the requirements of due process in sentencing are relevant to the jurisdictional issue at hand. Prior to the enactment of the federal and state rules relating to the disclosure of all or part of presentence reports, numerous courts had held that the failure to disclose a presentence report to the defense does not violate due process.[11]

counts of an information to a term of imprisonment for which the total sentence of all such counts amounts to confinement for three years or more . . . except in any case in which a different sentence could not have been imposed or in any case in which the sentence or commitment imposed resulted from the court's acceptance of a plea agreement or *in any case in which the sentence imposed was for a lesser term than was proposed in a plea agreement*" [emphasis added]); Practice Book § 39-8 ("[i]f the judicial authority accepts the plea agreement, it shall embody in the judgment and the sentence the disposition provided for in the plea agreement *or another disposition more favorable to the defendant than that provided for in the plea agreement*" [emphasis added]). This argument presupposes that a sentence could be imposed in an illegal manner if a trial court has relied on a material inaccuracy in *declining* to exercise its discretion to impose a lesser sentence than the agreed upon term in the plea agreement. The defendant further contends that the trial court's reason relates to the merits of his claim, and not the court's jurisdiction to consider the claim. In light of our conclusion that the failure of defense counsel to review a presentence report with a defendant does not constitute a basis for jurisdiction under § 43-22, we need not address either of these contentions.

[11] In reaching this conclusion, many courts had relied on *Williams* v. *New York*, 337 U.S. 241, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949), in which the United States Supreme Court held that a defendant who did not challenge the accuracy of the presentence report was not entitled under the due process clause to an opportunity to confront and cross-examine sources of information used in that report. In a subsequent plurality opinion, the Supreme Court qualified *Williams* in the specific context of capital cases, holding that the defendant had a due process right not to receive the death penalty on the basis of information that he had no opportunity to deny or explain.

See, e.g., *United States* v. *Alexander*, 498 F.2d 934, 935 (2d Cir. 1974); *United States* v. *Jones*, 473 F.2d 293, 296 (5th Cir.), cert. denied, 411 U.S. 984, 93 S. Ct. 2280, 36 L. Ed. 2d 961 (1973); *United States* v. *Dockery*, 447 F.2d 1178, 1182–83 and n.9 (D.C. Cir.), cert. denied, 404 U.S. 950, 92 S. Ct. 299, 30 L. Ed. 2d 266 (1971); *State* v. *Moore*, 49 Del. 29, 31–32, 108 A.2d 675 (1954); *People* v. *McFadden*, 31 Mich. App. 512, 517, 188 N.W.2d 141 (1971); *State* v. *Benes*, 16 N.J. 389, 395–96, 108 A.2d 846 (1954); *People* v. *Peace*, 18 N.Y.2d 230, 237, 219 N.E.2d 419, 273 N.Y.S.2d 64 (1966), cert. denied, 385 U.S. 1032, 87 S. Ct. 761, 17 L. Ed. 2d 679 (1967). Nonetheless, the principle had been recognized that, "where a judge explicitly relies on certain information in assessing a sentence, the defendant must be given some opportunity to rebut that information." (Internal quotation marks omitted.) *United States* v. *Garcia*, 693 F.2d 412,

*Gardner* v. *Florida*, supra, 430 U.S. 362. Although there has been little need for the courts to reconsider whether due process requires disclosure, because almost every jurisdiction currently requires disclosure of the presentence report to the defense; see footnote 17 of this opinion; the few courts to have done so have reached inconsistent results. Compare *United States* v. *Jackson*, 453 F.3d 302, 305–306 (5th Cir.) (summarily stating that, "[a]t sentencing, a defendant has a protected due process right to review and object to a [presentence report], but no absolute right to present witnesses"), cert. denied, 549 U.S. 987, 127 S. Ct. 462, 166 L. Ed. 2d 329 (2006), with *Bridinger* v. *Berghuis*, 429 F. Sup. 2d 903, 909 (E.D. Mich. 2006) ("[b]ecause there is no constitutional requirement that a court prepare or consider a presentence report, it follows that [the] petitioner has no constitutional right to review any such report"). A principal distinction may have developed between the right to see the actual report and the right to have access to the factual information therein; see *State* v. *Galindo*, 278 Neb. 599, 665, 774 N.W.2d 190 (2009) ("a court does not violate a defendant's due process rights by considering information in a presentence report when the defendant had notice and an opportunity to obtain access to the information in the report and to deny or explain the information to the sentencing authority"); as reflected in the extent of disclosure provided under the procedural rules of some states. See, e.g., Ark. Code Ann. § 5-4-102 (d) (1) (2006) (requiring court to "advise the defendant or his or her counsel of the factual contents and conclusions of any presentence investigation"); Fla. R. Crim. P. 3.713 (West 2009) (conferring discretion on court whether to disclose contents of presentence report but requiring disclosure of all factual material).

415 (5th Cir. 1982); accord *State* v. *Stevens,* 278 Conn. 1, 12, 895 A.2d 771 (2006) ("due process requires that the defendant be given the opportunity to contest the evidence upon which the trial court relies for sentencing purposes").

As we alluded to in our discussion in part I of this opinion, due process precludes a sentencing court from relying on materially untrue or unreliable information in imposing a sentence. See *Townsend* v. *Burke,* 334 U.S. 736, 741, 68 S. Ct. 1252, 92 L. Ed. 1690 (1948) (defendant's sentence could not stand where trial court sentenced him on basis of "assumptions concerning his criminal record which were materially untrue"); see also *United States* v. *Tucker,* 404 U.S. 443, 447, 92 S. Ct. 589, 30 L. Ed. 2d 592 (1972) (same); *United States* v. *Baylin,* 696 F.2d 1030, 1040 (3d Cir. 1982) ("as a matter of due process, factual matters may be considered as a basis for a sentence only if they have some minimal indicium of reliability"); *United States* v. *Malcolm,* 432 F.2d 809, 816 (2d Cir. 1970) ("[m]isinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process"). To prevail on such a claim as it relates to a presentence report, "[a] defendant [cannot] . . . merely alleg[e] that his presentence report contained factual inaccuracies or inappropriate information. . . . [He] must show that the information was *materially* inaccurate and that the judge *relied* on that information."[12] (Citations omitted; emphasis in original.) *United States* v. *Tooker,* 747 F.2d 975, 978 (5th Cir. 1984), cert.

---

[12] "A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, [bases] its sentence at least in part on it, or gives specific consideration to the information before imposing sentence." (Internal quotation marks omitted.) *Lechner* v. *Frank,* 341 F.3d 635, 639 (7th Cir. 2003).

denied, 471 U.S. 1021, 105 S. Ct. 2032, 85 L. Ed. 2d 314 (1985); accord *Hili* v. *Sciarrotta*, 140 F.3d 210, 216 (2d Cir. 1998) ("[t]he mere presence of hearsay or inaccurate information in a presentence report does not constitute a denial of due process"); *State* v. *Collette*, 199 Conn. 308, 321, 507 A.2d 99 (1986) ("the mere reference to information outside of the record does not require a sentence to be set aside unless the defendant shows: [1] that the information was materially false or unreliable; and [2] that the trial court substantially relied on the information in determining the sentence"); *State* v. *Taylor*, 91 Conn. App. 788, 792–94, 882 A.2d 682 (concluding that, because motion to correct sentence sought relief in form of new or amended presentence report solely for use in hearing before sentence review board, it did not state basis for jurisdiction under § 43-22), cert. denied, 276 Conn. 928, 889 A.2d 819 (2005).

In Connecticut, these rights are protected by statute and by the rules of practice. See General Statutes § 54-91b;[13] Practice Book §§ 43-7[14] and 43-10 (1);[15] *State* v.

[13] General Statutes § 54-91b provides: "In any case, without a showing of good cause, upon the request of the defendant or his attorney, prior to sentencing, the court shall provide the defendant or his attorney with a copy of his record of prior convictions and in any case wherein a presentence investigation is ordered, without a showing of good cause, the court shall provide the defendant or his attorney with a copy of the presentence investigation report at least twenty-four hours prior to the date set for sentencing and in both such cases shall hear motions addressed to the accuracy of any part of such record or report."

[14] Practice Book § 43-7 provides: "The presentence investigation or alternate incarceration assessment report or both shall be provided to the judicial authority, and copies thereof shall be provided to the prosecuting authority and to the defendant or his or her counsel in sufficient time for them to prepare adequately for the sentencing hearing, and in any event, no less than forty-eight hours prior to the date of the sentencing. Upon request of the defendant, the sentencing hearing shall be continued for a reasonable time if the judicial authority finds that the defendant or his or her counsel did not receive the presentence investigation or alternate incarceration assessment report or both within such time."

[15] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of guilty or nolo contendere or upon a verdict or finding of guilty, the judicial

*Arthur H.*, 288 Conn. 582, 607, 953 A.2d 630 (2008) ("our rules of practice are intended to ensure that a defendant receives process that he is due during sentencing"). The rules of practice also set forth the obligations of defense attorneys relating to the development and use of the presentence report to protect the defendant's interests. See Practice Book §§ 43-5, 43-13 and 43-14;[16] see also *State* v. *Harmon*, 147 Conn. 125, 129, 157 A.2d 594 (1960) ("Under our practice, a defendant is not deprived of the right of challenging the statements made in the [presentence] report. His counsel is furnished, as in the instant case, with a copy of the report in order that its contents may be made known to the defendant

---

authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, and to explain or controvert the presentence investigation report, the alternate incarceration assessment report or any other document relied upon by the judicial authority in imposing sentence. When the judicial authority finds that any significant information contained in the presentence report or alternate incarceration assessment report is inaccurate, it shall order the office of adult probation to amend all copies of any such report in its possession and in the clerk's file, and to provide both parties with an amendment containing the corrected information. . . ."

[16] Practice Book § 43-5 provides: "Defense counsel, on a prompt request, shall be notified of the time when the defendant shall be interviewed by probation officers regarding a presentence or alternate incarceration assessment report or both for the judicial authority and may be present:

"(1) To assist in answering inquiries of the probation officer;

"(2) To assist in resolving factual issues and questions;

"(3) To protect the defendant against incrimination regarding other pending indictments or investigations; and

"(4) To protect the defendant's rights with respect to an appeal of conviction."

Practice Book § 43-13 provides: "Defense counsel shall familiarize himself or herself with the contents of the presentence or alternate incarceration assessment report or both, including any evaluative summary, and any special medical or psychiatric reports pertaining to the [defendant]."

Practice Book § 43-14 provides: "Defense counsel shall bring to the attention of the judicial authority any inaccuracy in the presentence or alternate incarceration assessment report of which he or she is aware or which the defendant claims to exist."

and an opportunity afforded him to explain or controvert the statements contained in it."). Our case law establishes, however, that a failure to comply with procedures set forth under the rules of practice or the statutes relating to presentence reports does not necessarily, in and of itself, establish a violation of due process. See *State* v. *Patterson*, 236 Conn. 561, 568, 674 A.2d 416 (1996) (concluding that, despite statute and rule of practice directing trial courts to prepare presentence report, no due process right to such report); id., 580 (noting that, in order to assess whether failure to comply with statute and rule of practice rises to level of due process violation, question is "whether the [s]tate [has] gone beyond issuing mere procedural guidelines and [has] used language of an unmistakably mandatory character such that the incursion on liberty would not occur absent specified substantive predicates" and whether "the deprivation be of a significant and atypical nature" [internal quotation marks omitted]).

In the present case, the defendant contends that these authorities establish that, "for a sentence to be imposed in a legal manner, the contents of the [presentence report] must be reviewed with the defendant." He further contends that the dearth of case law supporting this contention is due to the fact that "the obligation of counsel to review the [presentence report] with the defendant is carefully protected and too fundamental to be disregarded on a regular basis . . . ." Finally, the defendant asserts that "a defendant's inability to comment about a [presentence report] at sentencing because it has never been reviewed with him implicates both the right 'to speak in mitigation of punishment' and 'the right to be sentenced by a judge relying on accurate information or considerations solely in the record.' "

Turning to the rules of practice and the statutes on which the defendant specifically relies, we note that all

but two of these provisions impose obligations on the defendant's attorney. Leaving aside for the moment the provisions relating to his attorney, the other authorities provide in relevant part that "the court shall provide the defendant *or his attorney* with a copy of the presentence investigation report at least twenty-four hours prior to the date set for sentencing and . . . shall hear motions addressed to the accuracy of any part of such . . . report"; (emphasis added) General Statutes § 54-91b; and that "[t]he judicial authority shall afford the parties an opportunity to be heard . . . and to explain or controvert the presentence investigation report . . . ." Practice Book § 43-10 (1).

In the present case, these authorities do not provide a basis for jurisdiction. The defendant does not claim that the court failed to provide Gionfriddo with a copy of the report, and neither the General Statutes nor the rules of practice require the sentencing court to inquire as to whether the defendant's attorney has reviewed the presentence report with him. Cf. Fed. R. Crim. P. 32 (i) (1) (A) ("[a]t sentencing, the [c]ourt . . . must verify that the defendant and the defendant's attorney have read and discussed the presentence report and any addendum to the report"). The defendant never has claimed that the trial court refused to consider any motion or request to dispute facts in the presentence report, and the record is clear that none was made. The defendant also never has claimed that the sentencing court failed to afford him or his counsel an opportunity to address the court. Indeed, the record reflects that, after twice referencing the presentence report at the outset of the hearing, the sentencing court permitted the defendant, his mother and Gionfriddo each to make statements.

In his brief to this court, the defendant appears to suggest that he personally was entitled to a copy of the presentence report if Gionfriddo did not review it with

him in order to bring any purported inaccuracies to the court's attention. Our statutes and rules of practice, however, like those of many other jurisdictions, do not require disclosure to both the defendant *and* his counsel.[17] See *State* v. *Gibbs*, 254 Conn. 578, 610, 758 A.2d 327 (2000) ("a defendant either may exercise his right to be represented by counsel . . . or his right to represent himself . . . but he has no constitutional right to do both at the same time" [citations omitted]). The defendant has pointed to no other authority demonstrating that he has such a personal right. See *Kadlec* v. *State*, 704 S.W.2d 526, 527 (Tex. App. 1986) (rejecting defendant's claim as unsupported by any authority that rule

---

[17] Although the federal rules require disclosure to both the defendant and his counsel; see Fed. R. Crim. P. 32 (e) (2); a review of the rules of procedure and statutes of other states reveal that a majority of states follow the practice of Connecticut, requiring disclosure to a defendant's counsel *or* an unrepresented defendant. See, e.g., Ala. R. Crim. P. 26.3 (c) (2003); Alaska R. Crim. P. 32.1 (b) (2010); Ariz. R. Crim. P. 26.6 (a) (2008); Ark. Code Ann. § 5-4-102 (d) (1) (2006); Colo. Rev. Stat. § 16-11-102 (1) (a) (2010); Del. Super. Ct. R. Crim. P. 32 (c) (3) (2010); Haw. Rev. Stat. § 706-604 (2) (Cum. Sup. 2007); 730 Ill. Comp. Stat. Ann. 5/5-3-4 (b) (2) (West 2007); Ind. Code Ann. § 35-38-1-12 (a) (LexisNexis 1998); Iowa Code Ann. § 901.4 (West Cum. Sup. 2009); Kan. Stat. Ann. § 21-4605 (a) (1) (2007); La. Code Crim. P. Ann. art. 877 (B) (2008); Mass. R. Crim. P. 28 (d) (3) (2009–2010); N.Y. Crim. P. Law § 390.50 (2) (a) (McKinney Cum. Sup. 2010); Pa. R. Crim. P. 703 (A) (2) (West 2009); R.I. Super. Ct. R. Crim. P. 32 (c) (3) (2009); Tex. Crim. P. Code Ann. art. 42.12, § 9 (d) (Vernon Cum. Sup. 2009); Wash. Super. Ct. Crim. R. 7.1 (a) (3) (West 2010); compare Idaho Crim. R. 32 (g) (1) (2009) (providing copy to defendant and his counsel); Mich. Comp. Laws Serv. § 771.14 (5) (LexisNexis Cum. Sup. 2009) (same); Mont. Code Ann. § 46-18-113 (1) (2007) (same); Nev. Rev. Stat. § 176.156 (1) (2007) (same); N.M. Rules Ann. 5-703 (2009) (same); N.C. Gen. Stat. § 15A-1333 (b) (2009) (same); Ohio Rev. Code Ann. § 2951.03 (D) (1) (West 2006) (same); Okla. Stat. Ann. tit. 22, § 982 (D) (West 2003) (same); S.D. Codified Laws § 23A-27-7 (2004) (same); Vt. R. Crim. P. 32 (c) (3) (2003) (same); W. Va. R. Crim. P. 32 (b) (6) (2009) (same); see also N.D. R. Crim. P. 32 (c) (4) (2008–2009) (conferring discretion on court to decide whether to disclose report to either party). Other states' provisions are less clear, simply requiring that copies be provided to both parties; see Fla. R. Crim. P. 3.713 (West 2009); 49 Minn. R. Crim. P. 27.03 (1) (West 2009); Tenn. Code Ann. § 40-35-208 (2006); or that a copy be made "available to the defendant through the defendant's counsel." D.C. Super. Ct. R. Crim. P. 32 (b) (3) (2009).

directing copy of report to be provided only to defendant's counsel violated due process "because it does not guarantee [the defendant] the personal right to review the presentence report and object to its contents . . . [and] that this right, like the right to counsel and the right to [a] jury trial, should not be subject to waiver for a defendant by his attorney").

We are mindful that the accuracy of such reports undoubtedly is commensurate with their utility in sentencing. Although it may be the better practice, neither our rules of practice nor our statutes require a sentencing court to make an affirmative inquiry about the accuracy of the information in the presentence report. Indeed, the rules of practice do not obligate the sentencing court to correct all inaccurate information of which it is made aware. Rather, consistent with the constitutional concerns previously discussed, those rules direct the trial court to make corrections to the presentence report only when an inaccuracy affecting "significant information" is brought to its attention. Practice Book § 43-10 (1). Therefore, it is clear that the sentencing court in the present case did not violate any of the rules of practice or statutes pertaining to presentence reports.

The defendant's claimed constitutional basis for jurisdiction—the right not to be sentenced on the basis of inaccurate information[18]—is predicated entirely on his

[18] As we previously have noted, the defendant also contends that his lack of opportunity to review the presentence report implicated his right to present mitigating evidence to the court. Beyond this cursory assertion, the defendant did not address this ground independently from his claim that his inability to review the report affected his right not to have the trial court rely on inaccurate information. There also is no basis in the record to construe this as an independent claim that the defendant had a right to offer additional mitigating evidence because it is undisputed that the defendant relinquished his right to argue for a lesser sentence under the terms of his plea agreement, he refused to participate in the preparation of the presentence report, and he was afforded an opportunity to address the court prior to sentencing.

claim that the rules of practice and the statutes afford him a personal right to review, and an opportunity to seek corrections to, the presentence report, a claim that we have rejected. In his motion to correct, he did not advance an independent constitutional claim that the purported inaccuracies were materially false and that the sentencing court actually had relied on them in sentencing him.[19] Moreover, an essential fact that must be inferred from the defendant's claims is that no one alerted the court to any inaccurate information in the report. Therefore, all we are left with is the defendant's claim as it relates to the conduct of his counsel.

As one court has noted, if a trial court relies on the presentence report and "there was no opportunity afforded [the defendant] *or his attorney* to rebut the inaccuracies, the sentence may be invalid. . . . If, on the other hand, [the defendant's] attorney failed to avail himself of opportunities to discover the substance of the report, and to develop and present rebuttal material . . . it is possible that [the defendant] received ineffective assistance of counsel."[20] (Citations omitted; empha-

---

[19] As we previously have noted herein, the defendant testified at the hearing held pursuant to § 43-22 that he had seen the report for the first time days before that hearing, well after he had filed his motion to correct the sentence. The lone reference at that hearing to the purported inaccuracies occurred when the defendant responded "yes" to the following question from his counsel: "Are there issues in the presentence [report] that you would like to correct?" Therefore, there was not even a basis on which to infer that the purported inaccuracies are of a nature that would be relevant to sentencing considerations. Cf. *Ryder* v. *Morris*, 752 F.2d 327, 332 (8th Cir. 1985) (concluding that, although "[the defendant] had failed to make any showing the sentencing judge had relied on the [presentence] report . . . the allegation that [the defendant], in effect, was responsible for the death of his wife, was serious enough to be at least rebuttably presumed to have affected the trial judge's sentencing decision" [citation omitted]).

[20] At the time the United States Supreme Court recognized the right to counsel in sentencing proceedings, it specifically linked that right to a defendant's right not to be sentenced on the basis of a materially false or inaccurate court record. See *Mempa* v. *Rhay*, 389 U.S. 128, 134, 88 S. Ct. 254, 19 L. Ed. 2d 336 (1967) ("[i]n particular, *Townsend* v. *Burke*, supra, [334 U.S. 736]

sis added.) *Ryder* v. *Morris*, 752 F.2d 327, 332 (8th Cir. 1985). We are mindful that there is limited authority suggesting that a motion to correct can be a proper jurisdictional vehicle to resolve ineffective assistance of counsel claims solely relating to sentencing. See *Barile* v. *Commissioner of Correction*, 80 Conn. App. 787, 789–90, 837 A.2d 827 (concluding that petitioner had procedurally defaulted on habeas claim of ineffective assistance of counsel due to counsel's failure to obtain copies of victims' statements, which rendered petitioner's guilty plea not knowingly and voluntarily made, because petitioner had not raised his claim at sentencing, on direct appeal or pursuant to motion to correct illegal sentence under § 43-22), cert. denied, 268 Conn. 915, 847 A.2d 310 (2004).[21] Nonetheless, this court consistently has adhered to a rule that, absent either specific authorization to raise such claims in a forum other than a habeas court or construction of such a claim to implicate improper conduct by the trial court, the exclusive forum for adjudicating ineffective assistance of counsel claims is by way of habeas proceedings. See, e.g., *State* v. *Arroyo*, 284 Conn. 597, 643–44, 935 A.2d 975 (2007) (addressing defendant's ineffective assistance of counsel claim on appeal, but limiting focus to actions of trial court, not defendant's counsel); *State* v. *Turner*, 267 Conn. 414, 426–27, 838 A.2d 947 (addressing ineffective of assistance of counsel claim on appeal solely because "Practice Book § 39-27 [4] provides an explicit

---

illustrates the critical nature of sentencing in a criminal case and might well be considered to support by itself a holding that the right to counsel applies at sentencing").

[21] In *Barile* v. *Commissioner of Correction*, supra, 80 Conn. App. 789–90, the Appellate Court cited *Cobham* v. *Commissioner of Correction*, supra, 258 Conn. 39, as authority for the defendant to file his § 43-22 motion to correct. Although, in *Cobham*, this court broadly stated that, "before seeking to correct an illegal sentence in the habeas court, a defendant either must raise the issue on direct appeal or file a motion pursuant to § 43-22 with the trial court"; id., 38; the claim in that case directly related to the conduct of the court and did not involve ineffective assistance of counsel.

exception to this general rule . . . and allows a defendant to withdraw a guilty plea after its acceptance if the 'plea resulted from the denial of effective assistance of counsel' "), cert. denied, 543 U.S. 809, 125 S. Ct. 36, 160 L. Ed. 2d 12 (2004).[22] There is no specific rule authorizing a defendant to bring his ineffective assistance of counsel claim by way of a motion to correct. For the reasons previously set forth herein, the conduct by Gionfriddo of which the defendant complains cannot be construed as a violation by the *court* of the defendant's rights at sentencing. Therefore, the trial court properly concluded that the defendant's motion to correct raised no claims over which the court had jurisdiction under § 43-22.[23]

In closing, however, we note that the defendant raises a legitimate concern about the potential adverse effect that inaccurate presentence reports could have on the conditions of an inmate's incarceration and release. We are mindful of the limitations on a defendant's ability

---

[22] We are mindful that the reason most often cited in our case law holding that ineffective assistance of counsel claims must be brought by way of a habeas petition is that such claims generally require an evidentiary hearing and fact finding, which are functions that appellate courts do not exercise. See *State* v. *Beavers*, 290 Conn. 386, 412, 963 A.2d 956 (2009); *State* v. *Greene*, 274 Conn. 134, 151, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct. 2981, 165 L. Ed. 2d 988 (2006); *State* v. *Turner*, supra, 267 Conn. 426–27; *State* v. *Munoz*, 233 Conn. 106, 131 n.16, 659 A.2d 683 (1995). By declining to allow ineffective assistance of counsel claims to be adjudicated pursuant to a motion to correct an illegal sentence, we do not intend to state an opinion as to whether trial courts may consider evidence outside the record for purposes of § 43-22 motions, as that issue has not been briefed and is not before us in this case.

[23] The defendant's reliance on *State* v. *Casiano*, supra, 282 Conn. 614, for a contrary conclusion is misplaced. Although the motion to correct in that case had alleged that the defendant's plea was not knowing and voluntary because his trial counsel erroneously had advised him about the maximum sentence that he would serve; id., 617; we made clear that the issue before this court was unrelated to the merits of that claim and that we "express[ed] no opinion as to whether his motion [was] proper under . . . § 43-22 . . . ." Id., 620 n.11; see footnote 5 of this opinion.

to correct such defects through judicial relief. See *State v. Dixon*, 114 Conn. App. 1, 7–8, 967 A.2d 1242 (noting that case law "suggest[s] that a defendant who does not challenge his sentence has no judicial remedy, by way of direct appeal or habeas corpus, to redact inaccurate statements of fact in a [presentence] report," but leaving open possibility that "there might be some misstatements in a report that are so patently false, unreliable and harmful to the defendant's future incarceration, probation or parole that he could challenge them on direct appeal from the sentence"), cert. denied, 292 Conn. 910, 973 A.2d 108 (2009). Although this court previously has stated that "[the] sole purpose [of the presentence report] is to enable the court, within the limits fixed by statute, to impose an appropriate penalty, fitting the offender as well as the crime"; (internal quotation marks omitted) *Steadwell* v. *Warden*, 186 Conn. 153, 159, 439 A.2d 1078 (1982); our statutes and rules of practice make evident that the report will have other uses as it follows the defendant through the correctional system. See *State* v. *Dixon*, supra, 8 (noting that General Statutes § 54-91a [c] "requires that such a report accompany a defendant into that system" and that Practice Book § 43-10 [1] "contemplates that a report will follow the defendant into the correctional system for appropriate use by those officials"); *Board of Pardons* v. *Freedom of Information Commission*, 19 Conn. App. 539, 543, 563 A.2d 314 ("[a] file on a prisoner-applicant for pardon is a full dossier of information such as the [presentence report]"), cert. denied, 212 Conn. 819, 565 A.2d 539 (1989). Several federal courts have acknowledged the significant concern raised by the defendant because of that fact. See, e.g., *United States* v. *Katzin*, 824 F.2d 234, 238–40 (3d Cir. 1987); *United States* v. *Petitto*, 767 F.2d 607, 610–11 (9th Cir. 1985), overruled in part on other grounds by *United States* v. *Fernandez-Angulo*, 897 F.2d 1514, 1517 n.5 (9th Cir. 1990); *United*

*States* v. *Velasquez*, 748 F.2d 972, 974 (5th Cir. 1984); see generally S. Fennell & W. Hall, "Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts," 93 Harv. L. Rev. 1613, 1628 (1980). The federal scheme provides a mechanism for correcting such inaccuracies or indicating that the fact is disputed, even if the purported inaccuracy has no bearing on sentencing. See Fed. R. Crim. P. 32 (i) (3) (providing that, when defendant alleges inaccuracies in presentence report, sentencing judge must make written findings as to allegations, or written determination that disputed matters will not be relied upon for sentencing, and must attach those findings or that determination to copy of presentence report made available to federal Bureau of Prisons); see also 28 C.F.R. § 2.19 (c) ("[i]f the prisoner disputes the accuracy of the information presented, the [Parole] Commission shall resolve such dispute by the preponderance of the evidence standard; that is, the [Parole] Commission shall rely upon such information only to the extent that it represents the explanation of the facts that best accords with reason and probability").

To ameliorate in part this concern, we recommend that sentencing courts: inquire as to whether the defendant *and* his counsel have had an opportunity to review the presentence report; inquire as to whether there are any material inaccuracies that either of them wish to bring to the court's attention; and exercise their authority under our rules of practice and General Statutes to amend the report. See footnotes 13 and 15 of this opinion. To the extent, however, that other procedures might be implemented to allow a defendant to challenge or correct information solely relevant to correctional functions, that is a matter for the legislature, the department of correction or both.

The decision is affirmed.

In this opinion the other justices concurred.