## STATE OF CONNECTICUT *v.* JEFFREY PIERCE
## (AC 32022)

Robinson, Bear and Flynn, Js.

---

Argued April 11—officially released June 21, 2011

*James B. Streeto,* assistant public defender, for the appellant (defendant).

*Robert J. Scheinblum,* senior assistant state's attorney, with whom, on the brief, was *Scott J. Murphy,* state's attorney, for the appellee (state).

*Opinion*

BEAR, J. The defendant, Jeffrey Pierce, appeals from the judgment of the trial court dismissing his motion

to correct an illegal sentence. The substance of the defendant's contention is that the sentencing court improperly considered a presentence investigation report (1999 report) that relied, in part, on confidential information contained in an earlier presentence investigation report (1996 report) submitted in an unrelated case. On appeal, the defendant claims that the court improperly concluded that it did not have subject matter jurisdiction over his motion to correct an illegal sentence. He further claims that the court improperly concluded in the alternative that the defendant waived a challenge to the court's consideration of the 1999 report and that the motion failed on its merits because the defendant failed to prove harm. We conclude that the court properly determined that it was without subject matter jurisdiction.[1] We therefore affirm the judgment of the trial court.

The following facts are relevant to our resolution of the defendant's appeal. On May 7, 1999, following the defendant's conviction on the charges of kidnapping in the second degree in violation of General Statutes § 53a-94 and burglary in the first degree in violation of General Statutes § 53a-101 (a) (1), the court sentenced the defendant to a total effective sentence of thirty years incarceration, execution suspended after twenty-five years, with five years probation. In preparation for the sentencing hearing, the court received the 1999 report from the probation department. See General Statutes (Rev. to 1999) § 54-91a;[2] Practice Book (1999) §§ 43-3 through

---

[1] Because we conclude that the court did not have subject matter jurisdiction, we need not consider the defendant's other claims.

[2] General Statutes (Rev. to 1999) § 54-91a provides in relevant part: "(a) No defendant convicted of a crime, other than a capital felony, the punishment for which may include imprisonment for more than one year, may be sentenced . . . until a written report of investigation by a probation officer has been presented to and considered by the court . . . .

"(c) Whenever an investigation is required, the probation officer shall promptly inquire into the circumstances of the offense, the attitude of the complainant or victim, or of the immediate family where possible in cases of homicide, and the criminal record, social history and present condition

43-9. Both the 1996 and 1999 reports were prepared by Probation Officer Maureen Klinkert. In preparing the 1999 report for the court, Klinkert asked the defendant to sign a consent form to obtain his treatment records, but the defendant refused. Klinkert then used information contained in the 1996 report that she had prepared when the defendant was awaiting sentencing in an unrelated case, wherein he had signed written waivers permitting her to obtain his treatment records. These records included a prognosis that the defendant was at high risk of committing sexual and aggressive offenses, that he had been sexually abusing children since he was nine years old, that he had been diagnosed as a developing pedophile and sexual sadist and that he had borderline antisocial personality traits. During the defendant's sentencing in 1996, this information was discussed at length on the record in open court.

During the May 7, 1999 sentencing hearing in the present case, the court stated that it had ordered, and the probation department had prepared, the 1999 report and that the court had reviewed it thoroughly. See Practice Book § 43-3 (a).[3] The court asked the state and the defendant if they had reviewed the 1999 report as well.

of the defendant. Such investigation shall include an inquiry into any damages suffered by the victim, including medical expenses, loss of earnings and property loss. All local and state police agencies shall furnish to the probation officer such criminal records as the probation officer may request. When in the opinion of the court or the investigating authority it is desirable, such investigation shall include a physical and mental examination of the defendant. If the defendant is committed to any institution, the investigating agency shall send the reports of such investigation to the institution at the time of commitment. . . .

"(d) Any information contained in the files or report of an investigation pursuant to this section shall be available to the Office of the Bail Commission for the purpose of performing the duties contained in section 54-63d."

[3] Practice Book § 43-3 (a) provides in relevant part: "If the defendant is convicted of a crime other than a capital felony, the punishment for which may include imprisonment for more than one year, the judicial authority shall order a presentence investigation, or the supplementation of any existing presentence investigation report. . . ."

The defendant's attorney stated that he had reviewed it and gone over it "briefly" with the defendant. The court then asked the defendant if he needed more time to go over the 1999 report, and the defendant nodded his head. The court then called a recess to give the defendant and his attorney time to go over the 1999 report in more detail. See Practice Book § 43-7.[4] When the sentencing hearing resumed approximately fifty minutes later, defense counsel stated on the record that he and the defendant had reviewed the 1999 report fully and that they were ready to proceed.

After statements by the prosecutor, the victim, defense counsel, the defendant and the defendant's mother, the court proceeded to discuss the seriousness of the defendant's crimes. See Practice Book § 43-10.[5]

[4] Practice Book § 43-7 provides in relevant part: "The presentence investigation . . . report . . . shall be provided to the judicial authority, and copies thereof shall be provided to the prosecuting authority and to the defendant or his or her counsel in sufficient time for them to prepare adequately for the sentencing hearing . . . . Upon request of the defendant, the sentencing hearing shall be continued for a reasonable time if the judicial authority finds that the defendant or his or her counsel did not receive the presentence investigation . . . report . . . within such time."

[5] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence . . . the judicial authority shall . . . conduct a sentencing hearing as follows:

"(1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition, *and to explain or controvert the presentence investigation report* . . . . When the judicial authority finds that any significant information contained in the presentence report . . . is inaccurate, it shall order the office of adult probation to amend all copies of any such report in its possession and in the clerk's file, and to provide both parties with an amendment containing the corrected information.

"(2) The judicial authority shall allow the victim and any other person directly harmed by the commission of the crime a reasonable opportunity to make, orally or in writing, a statement with regard to the sentence to be imposed.

"(3) The judicial authority shall allow the defendant a reasonable opportunity to make a personal statement in his or her own behalf and to present any information in mitigation of the sentence. . . ." (Emphasis added.)

The court found that the defendant was a sexual deviant, whose objective on the day of the kidnapping was to sexually assault the victim. It also discussed the defendant's background, including other convictions, his antisocial behavior and his unwillingness to seek the help that he needed. The court then sentenced the defendant to a total effective sentence of thirty years incarceration, execution suspended after twenty-five years, with five years probation. Following its imposition of this sentence, the court considered the state's motion that it make a finding pursuant to General Statutes § 54-254 that the kidnapping was a crime committed for sexual purposes, which would require, among other things, that the defendant register as a sexual offender. The court granted the motion, making such a finding. The defendant's conviction was upheld on direct appeal; see *State* v. *Pierce*, 69 Conn. App. 516, 794 A.2d 1123 (2002), rev'd in part, 269 Conn. 442, 849 A.2d 375 (2004) (reversed and remanded with direction to reinstate sexual offender registry requirement imposed by trial court); and his subsequent appeal from the habeas court's dismissal of his habeas petition, alleging ineffective assistance of appellate counsel and his first habeas counsel, was dismissed. See *Pierce* v. *Commissioner of Correction,* 100 Conn. App. 1, 916 A.2d 864, cert. denied, 282 Conn. 908, 920 A.2d 1017 (2007).[6]

In February, 2009, the defendant filed a motion to correct an illegal sentence on the ground that his sentence had been imposed in an illegal manner. He argued

[6] In the defendant's first habeas trial, the court, *White, J.,* in an oral decision, reinstated the defendant's right to sentence review but dismissed his claim of ineffective assistance of trial counsel. *Pierce* v. *Warden,* Superior Court, judicial district of Tolland, Docket No. CV-05-4000609-S (November 24, 2010) (*Nazzaro, J.*). The sentence review division of the Superior Court affirmed the defendant's sentence, concluding that it was neither inappropriate nor disproportionate. *State* v. *Pierce,* Superior Court, judicial district of New Britain, Docket No. CR-98-177629 (June 29, 2005) (*Holden, Miano* and *Iannotti, Js.*).

that the court's consideration of the 1999 report, which contained information from the 1996 report that was based on confidential treatment records, should not legally have been before the court because the defendant had refused to sign a new release. The court, *Espinosa, J.,* concluded that it did not have subject matter jurisdiction over the defendant's motion because the allegations contained therein did not fit within the illegal sentence criteria. In the alternative, the court concluded that the defendant had waived this claim by failing to object to the inclusion of this information at the time of sentencing. The court also determined as an alternate holding that even if it were to conclude that it had been error for the sentencing court to have considered this information, the error was harmless. This appeal followed.

The defendant claims that the court improperly concluded that it did not have subject matter jurisdiction over the motion to correct an illegal sentence. We disagree.

"It is axiomatic that, in a criminal case, the jurisdiction of the sentencing court terminates once a defendant's sentence has begun and a court may no longer take any action affecting a sentence unless it expressly has been authorized to act." (Internal quotation marks omitted.) *State* v. *Olson,* 115 Conn. App. 806, 810, 973 A.2d 1284 (2009). Pursuant to Practice Book § 43-22: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

"An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is inherently contradictory." (Internal quotation marks omitted.) *State* v. *Olson,* supra, 115 Conn. App.

811. "Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [the] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Internal quotation marks omitted.) *State* v. *McNellis*, 15 Conn. App. 416, 444, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). "A defendant properly may challenge his criminal sentence on the ground that it was imposed in an illegal manner by filing with the trial court a motion pursuant to Practice Book § 43-22." (Internal quotation marks omitted.) *State* v. *Olson*, supra, 811. "[T]hese enumerated examples [however] would not encompass rights or procedures subsequently recognized as mandated by federal due process. . . . Nor would those examples encompass procedures mandated by state law that are intended to ensure fundamental fairness in sentencing, which, if not followed, could render a sentence invalid. Therefore, the examples cited in *McNellis*, are not exhaustive and the parameters of an invalid sentence will evolve." (Citations omitted.) *State* v. *Parker*, 295 Conn. 825, 839–40, 992 A.2d 1103 (2010). Because we are concerned with a matter of jurisdiction, our review of this claim is plenary. Id.

We conclude that the present case is controlled by our Supreme Court's recent decision in *Parker*.[7] In *Parker*, our Supreme Court upheld the judgment of the trial court dismissing a motion to correct an illegal sentence on the ground that the trial court lacked subject matter jurisdiction. Id., 841. The defendant had claimed that he had been deprived of an opportunity to review a presentence report and to address the inaccuracies that

---

[7] *Parker* was decided after the trial court ruled in the present case.

were contained in the report; he also claimed that his attorney had failed to go over the report with him or to bring to the sentencing court's attention the inaccuracies contained in the report. Id., 840. The Supreme Court explained that the defendant had not claimed that the court refused to consider a motion or a request made by him to contest facts in the report, to obtain a copy of the report, to be given time to go over the report or to address the court. Id., 847. This, the court explained, was because the defendant never had filed such a motion nor made such a request. Id. Our Supreme Court concluded, therefore, that the defendant actually was complaining about counsel's failures, rather than the sentencing court's failures. The court then concluded that the sentencing court had not violated the defendant's rights at sentencing—there having been no attempt by the defendant or his counsel to alert the court to any potential problem with the report—and the trial court, therefore, properly concluded that it did not have jurisdiction under Practice Book § 43-22 to consider the defendant's claim. Id., 852.

In the present case, the defendant does not challenge the trial court's conclusion that he did not meet any of the examples enumerated in *McNellis*. He argues, rather, that *Parker* specifically expanded the enumerated examples established by *McNellis* to include, inter alia, procedures mandated by state law that are intended to ensure fundamental fairness in sentencing. See id., 840. He argues that the confidentiality of his treatment records pursuant to General Statutes § 52-146e[8] qualifies as just such a procedure. He further

[8] General Statutes § 52-146e provides: "(a) All communications and records as defined in section 52-146d shall be confidential and shall be subject to the provisions of sections 52-146d to 52-146j, inclusive. Except as provided in sections 52-146f to 52-146i, inclusive, no person may disclose or transmit any communications and records or the substance or any part or any resume thereof which identify a patient to any person, corporation or governmental agency without the consent of the patient or his authorized representative.

argues that his sentence, therefore, was imposed in an illegal manner because the sentencing court should not have considered information in the 1999 report that was derived from confidential and, thus, privileged information contained in the 1996 report because he did not sign a new release for that information to be reused. We are not persuaded by this argument.

The essence of the defendant's claim is that the probation department had no authority to include in the 1999 report the privileged information it had received when preparing the 1996 report, for which the defendant had signed written waivers.[9] He asserts that the privileged information could not be reused by the probation department in preparing a new report. Similar to the *Parker* case, the defendant is not complaining about the actions of the sentencing court. Clearly, in order to comply with our General Statutes and our rules of

"(b) Any consent given to waive the confidentiality shall specify to what person or agency the information is to be disclosed and to what use it will be put. Each patient shall be informed that his refusal to grant consent will not jeopardize his right to obtain present or future treatment except where disclosure of the communications and records is necessary for the treatment.

"(c) The patient or his authorized representative may withdraw any consent given under the provisions of this section at any time in a writing addressed to the person or office in which the original consent was filed. *Withdrawal of consent shall not affect communications or records disclosed prior to notice of the withdrawal.*" (Emphasis added.)

[9] We note that Practice Book (1999) § 43-9 provides in relevant part: "The presentence investigation . . . reports shall not be public records and shall not be accessible to the public. They shall be available initially to the parties designated in Section 43-7 for use in the sentencing hearing and in any subsequent proceedings wherein the same conviction may be involved, and they shall be available *at all times* to the following:

"(1) The office of adult probation . . . .

"(7) Any court of proper jurisdiction where it is relevant to *any proceeding* before such court. Such court may also order that the report be made available to counsel for the parties for the purpose of such proceeding . . . ." (Emphasis added.)

We also note that Practice Book § 7-14 (a) provides in relevant part: "The office of adult probation shall maintain one copy of each presentence investigation report for twenty-five years. . . ."

practice, the court was required to order and to review the report prepared by the probation department. See General Statutes (Rev. to 1999) § 54-91a; Practice Book (1999) §§ 43-3 through 43-9. Rather, the defendant is complaining about the actions of the probation department in its preparation of the 1999 report. However, there was no attempt by counsel or by the defendant to alert the court that the defendant had a problem with the report, there was no attempt by counsel or the defendant to request that the alleged improper information be stricken from the report, and there was no denial by the court of any request made by the defendant related to the report.[10] Quite to the contrary, when the defendant indicated that he had not had sufficient time to go over the report with counsel, the court called a recess and gave the defendant the time he needed. After the proceedings were reconvened, neither the defendant nor counsel said a word about any problem with the contents of the 1999 report. We conclude, therefore, guided by our Supreme Court's analysis in *Parker*, that the trial court properly determined that it did not have jurisdiction over the defendant's claim pursuant to Practice Book § 43-22. We further conclude that the alleged confidentiality of the defendant's treatment records pursuant to § 52-146e has no bearing on our analysis.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] Practice Book § 43-14 provides in relevant part: "Defense counsel shall bring to the attention of the judicial authority any inaccuracy in the presen-

tence . . . report of which he or she is aware or which the defendant claims to exist."