# STATE OF CONNECTICUT *v.* CHARLES F.*
## (AC 32608)

DiPentima, C. J., and Beach and Foti, Js.

Argued October 21, 2011—officially released February 21, 2012

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

*Auden Grogins,* special public defender, for the appellant (defendant).

*Rita M. Shair,* senior assistant state's attorney, with whom were *Terence D. Mariani,* senior assistant state's attorney, *Maureen Platt,* state's attorney, and, on the brief, *John A. Connelly,* former state's attorney, and *Nancy L. Walker,* former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Charles F., appeals from the trial court's denial of his motion to correct an illegal sentence. On appeal, the defendant claims that his untimely receipt of the presentencing investigation report caused the sentencing court to rely on inaccurate information. We disagree and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the present case. On October 17, 2006, local police discovered over fifty images in the defendant's possession depicting naked minor children engaged in sexual intercourse with adults. By way of an information dated March 20, 2007, the defendant was charged with possession of child pornography in the first degree in violation of General Statutes (Rev. to 2005) § 53a-196d.[1] On June 3, 2008, the defendant entered a plea of guilty to this charge pursuant to *North Carolina* v. *Alford,* 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).[2]

[1] General Statutes (Rev. to 2005) § 53a-196d (a) provides: "A person is guilty of possessing child pornography in the first degree when such person knowingly possesses fifty or more visual depictions of child pornography."

[2] "Under *North Carolina* v. *Alford,* [supra, 400 U.S. 25], a criminal defendant is not required to admit his guilt . . . but consents to being punished as if he were guilty to avoid the risk of proceeding to trial. . . . A guilty plea under the *Alford* doctrine is a judicial oxymoron in that the defendant does not admit guilt but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea nevertheless." (Internal quotation marks omitted.) *State* v. *Pentland,* 296 Conn. 305, 308 n.3, 994 A.2d 147 (2010).

After accepting the defendant's plea, in accordance with our rules of practice, the court ordered the preparation of a presentence investigation report (report) by the office of adult probation. See Practice Book § 43-3. The report contained the following statements relevant to the present appeal. Under the heading "offender's version," the report states: "At the advice of his attorney, the offender reserved the right to address the [c]ourt at the time of sentencing." Under the heading "relationships/children" the report conveys the following statement made by the defendant's daughter: "I know my dad. He acts like a little kid. He horse plays but he knows his age limit. I still talk to his son (one of the victims in [the defendant's] pending case) and he told me that none of that stuff happened."[3]

The defendant was sentenced on September 19, 2008. At the hearing, the prosecution made the following statement: "I think that the [report] largely speaks for itself. It paints a very dim picture of [the defendant] as an individual. He has an extensive criminal record that goes back a number of years. I counted up in the neighborhood, I think, of thirty prior convictions for felonies. For misdemeanors. He's even got federal convictions, where he did a substantial amount of jail time."

Shortly before imposing sentence, the court stated: "The [report], from the perspective of your personal life, and your history, certainly is not a good one. You had a long and serious history. Multitude of convictions for assaults, and threats and larcenies, burglaries, criminal impersonation. One conviction for a sexual assault in the fourth degree. That involved a nolle of a risk of injury, clearly involved an underaged child. And a telecommunications fraud, violations of protective

---

[3] The state also had charged the defendant with sexual assault in the first degree in a separate proceeding. This second case, which remained pending when the defendant was sentenced in the present case, was premised on allegations that the defendant had abused his son sexually.

order, and other federal crimes. Obviously, a very serious history. And, as the state pointed out, there is pending here, a sexual assault in the first degree, with allegations involving sex with a child. That unfortunately is consistent with the type of photos that were on the computer." The court then sentenced the defendant to twenty years of incarceration, execution suspended after twelve years, followed by fifteen years of probation.

On June 1, 2010, the defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22. In this motion, the defendant argued that he did not receive the report forty-eight hours before sentencing as required by Practice Book § 43-7 and that, as a result of this untimely receipt, he was unable to correct several inaccuracies, including (1) the statement in the report that the defendant did not want to include an "offender's version," (2) the statement in the report that the defendant's son was "one of the victims in [the defendant's] pending case"[4] and (3) the prosecution's statement that the defendant had committed thirty felonies. A hearing on this motion was held on June 11, 2010. On June 14, 2010, the court denied the defendant's motion. This appeal followed.

On appeal, the defendant claims that the trial court abused its discretion in denying his motion to correct an illegal sentence. The state responds that the trial court lacked subject matter jurisdiction to consider the defendant's motion. In the alternative, the state argues that the trial court did not abuse its discretion by denying the defendant's motion because the sentencing court did not rely on the purportedly inaccurate pieces of information identified by the defendant.

[4] The defendant argues that this statement implies, incorrectly, that his son was depicted in the child pornography seized by the police.

I

The state argues that the trial court lacked subject matter jurisdiction over the defendant's motion to correct. Because the state's argument raises a threshold issue which must be considered before the merits of the appeal may be reached, we address this issue first. See *Johnson* v. *Commissioner of Correction*, 258 Conn. 804, 813, 786 A.2d 1091 (2002) ("[o]nce the question of lack of jurisdiction of a court is raised, [it] must be disposed of no matter in what form it is presented" [internal quotation marks omitted]). For the reasons listed below, we conclude that the trial court had subject matter jurisdiction over the defendant's motion.

We begin our analysis of this issue by setting forth the applicable standard of review. "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary. . . . Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . The subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal." (Internal quotation marks omitted.) *Richardson* v. *Commissioner of Correction*, 298 Conn. 690, 696, 6 A.3d 52 (2010).

"The Superior Court is a constitutional court of general jurisdiction. . . . In the absence of statutory or constitutional provisions, the limits of its jurisdiction are delineated by the common law. . . . [A] generally accepted rule of the common law is that a sentence cannot be modified by the trial court . . . if the sentence was valid and execution of it has commenced. (Citation omitted; internal quotation marks omitted.) *State* v. *Parker*, 295 Conn. 825, 834, 992 A.2d 1103 (2010). "Because this jurisdictional limitation presupposes a

*valid* sentence, it long has been understood that, if a court imposes an invalid sentence, it retains jurisdiction to substitute a valid sentence." (Emphasis in original.) Id., 835. "In Connecticut, [Practice Book] § 43-22 sets forth the procedural mechanism for correcting invalid sentences." Id., 836. Section 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

In *State* v. *McNellis*, 15 Conn. App. 416, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988), this court stated: "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Citations omitted; internal quotation marks omitted.) Id., 443–44. Our Supreme Court later adopted these definitions, noting only that "the examples cited in *McNellis* are not exhaustive and the parameters of an invalid sentence will evolve." *State* v. *Parker*, supra, 295 Conn. 840.

In the present case, the defendant's motion alleged that the sentencing court relied on three inaccurate pieces of information. Such a claim falls squarely within the common-law jurisdiction of the Superior Court. See *State* v. *Osuch*, 124 Conn. App. 572, 579, 5 A.3d 976 ("[The defendant] alleges that the court relied on inaccurate information in sentencing him . . . based on a

report that was prepared by a probation officer who never met with him. Accordingly, the defendant contends that he was denied the right to be sentenced by a judge who was relying on accurate information. . . . [T]he defendant is entitled to file this motion under Practice Book § 43-22 and . . . the court possessed jurisdiction to entertain it."), cert. denied, 299 Conn. 918, 10 A.3d 1052 (2010). Consequently, we conclude that the trial court possessed jurisdiction over the defendant's motion.[5]

## II

The defendant claims that the trial court abused its discretion by denying his motion to correct an illegal sentence because the sentencing court relied on three "inaccurate" pieces of information: (1) the statement in the report that the defendant did not want to include an "offender's version" (2) the statement in the report that the defendant's son was "one of the victims in [the defendant's] pending case" and (3) the prosecution's statement that the defendant had committed thirty felonies. We disagree.

We begin by setting forth our standard of review. "[A] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed

---

[5] Our Supreme Court's ruling in *Parker* is not, as the state suggests, inconsistent with this conclusion. In *Parker*, our Supreme Court held that the trial court lacked subject matter jurisdiction over the defendant's motion to correct an illegal sentence because "[t]he defendant's claimed constitutional basis for jurisdiction—the right not to be sentenced on the basis of inaccurate information—[was] predicated entirely on his claim that the rules of practice and the statutes afford him a personal right to review, and an opportunity to seek corrections to, the presentence report, a claim that we have rejected. In his motion to correct, he did not advance an independent constitutional claim that the purported inaccuracies were materially false and that the sentencing court actually had relied on them in sentencing him. . . . Therefore, all we are left with is the defendant's claim as it relates to the conduct of his counsel." *State* v. *Parker*, supra, 295 Conn. 849–50. In the present case, the defendant's motion identified specific inaccuracies and argued that they were relied on by the sentencing judge.

pursuant to the abuse of discretion standard." (Internal quotation marks omitted.) *State* v. *Santos*, 125 Conn. App. 766, 770, 9 A.3d 788 (2011). "In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Carter*, 122 Conn. App. 527, 532, 998 A.2d 1217 (2010), cert. denied, 300 Conn. 915, 13 A.3d 1104 (2011).

"To prevail on such a claim as it relates to a presentence report, [a] defendant [cannot] . . . merely alleg[e] that his presentence report contained factual inaccuracies or inappropriate information. . . . [He] must show that the information was *materially* inaccurate and that the [sentencing] judge *relied* on that information." (Emphasis in original; internal quotation marks omitted.) *State* v. *Parker*, supra, 295 Conn. 843. "A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, [bases] its sentence at least in part on it, or gives specific consideration to the information before imposing sentence." (Internal quotation marks omitted.) Id., 843 n.12.

In the present case, the trial court properly concluded that the sentencing court did not rely on inaccurate information. First, the sentencing court did not reference or otherwise indicate that it was relying on the report's assertion that the defendant did not wish to include an offender's version.[6] Second, although some

---

[6] Although the defendant's original motion argues, at least nominally, that this statement represents an "inaccuracy" upon which the sentencing court relied, the gravamen of this claim appears to be that the omission of the offender's version from the report violated the defendant's right to speak in mitigation of his own punishment. This claim must also fail. The defendant does not dispute that he explicitly was provided an opportunity to speak on his own behalf at sentencing. Indeed, at that time the defendant made the following statement to the court: "[The prosecution] made it sound

ambiguity may have been created by the report's statement that the defendant's son was "one of the victims in [the defendant's] pending case," there is no evidence to indicate that the sentencing court believed that the word "pending" referred to the charges of child pornography. To the contrary, the sentencing court's own use of the term "pending" belies this conclusion.[7] Third, the sentencing court's piecemeal recitation of the defendant's prior convictions indicates that it properly relied on the accurate representation of the defendant's criminal history contained within the report rather than the abstract estimate given by the prosecution prior to sentencing. Given the presence of this evidence in the record, the trial court could have reasonably concluded that the sentencing court did not rely on inaccurate information and that the defendant's sentence was therefore not imposed in an illegal manner. Consequently, we conclude that the trial court did not abuse its discretion by denying the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

like [the contraband was] all on my computers. There was nothing on my computers whatsoever. There was nothing . . . to indicate that. I'm the one that let these officers know there was a disk in my trunk, of child porn. There was no child porn anywhere else on the computers. He's making it sound like I enjoyed—I never even saw the stuff on here. That's all I wanted to say."

[7] As we have previously noted, the sentencing court stated: "And, as the state pointed out, there is pending here, a sexual assault in the first degree,