******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CHANDRA BOZELKO
(AC 35450)

Lavine, Sheldon and Bishop, Js.

*Argued October 15, 2014—officially released January 13, 2015*

(Appeal from Superior Court, judicial district of
Ansonia-Milford, geographical area number five,
Arnold, J.)

*Chandra Bozelko*, self-represented, the appellant
(defendant).

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, were *Kevin D. Lawlor*, state's attorney, and *Paul O. Gaetano*, supervisory assistant state's
attorney, for the appellee (state).

*Opinion*

SHELDON, J. The self-represented defendant, Chandra Bozelko, appeals from the trial court's judgment dismissing her motion to correct illegal sentence under Practice Book § 43-22[1] on the ground that it lacked subject matter jurisdiction over the claims presented in that motion. The principal issue in this appeal is whether any of the grounds upon which the defendant claimed in her motion that her sentence was imposed in an illegal manner, all of which concern the process by which her presentence investigation report (PSI) was prepared, states a valid and sufficient basis for correcting her sentence under § 43-22, as interpreted and applied by our Supreme Court in *State* v. *Parker*, 295 Conn. 825, 992 A.2d 1103 (2010). We conclude, for the following reasons, that the defendant's allegations stated valid grounds for correcting her sentence under § 43-22, and thus that the trial court erred in dismissing her motion for lack of subject matter jurisdiction. Accordingly, we reverse the judgment of the trial court and remand this case for further proceedings on the merits of the defendant's motion.

The following facts and procedural history are relevant to our resolution of this appeal. Following a jury trial, the defendant was convicted of ten felonies and four misdemeanors based upon her involvement in four separate incidents involving larceny or attempt to commit larceny, identity theft, illegal use of a credit card, and forgery.[2] After the jury returned its verdict on October 9, 2007, the trial court, *Cronan, J.*, set December 7, 2007, as the sentencing date. Pursuant to General Statutes § 54-91a[3] and Practice Book § 43-3,[4] the court ordered that a PSI be prepared.

On November 14, 2007, Lisa Gerald, the probation officer assigned to prepare the PSI, sent the defendant a letter directing her to report for an interview on November 19, 2007. The following day, the defendant responded to Gerald by sending her a letter informing her that she was seeking new counsel to represent her at sentencing and requesting, on that basis, that she not be interviewed for the PSI until her new counsel could be present. Gerald replied to the defendant, in a letter dated November 15, 2007, that she would not interview her until all issues "pertaining to counsel have been resolved," and that she should report to court on December 7, 2007, to receive further instructions.

Four days later, however, at the November 19, 2007 hearing on defense counsel's motion to withdraw,[5] Judge Cronan reported that he had received a letter from Gerald notifying him that the defendant had chosen not to participate in the presentence investigation interview. In light of that communication, the court advised the defendant that it intended to proceed with sentencing on December 7, 2007, and warned her as

follows: "[Y]ou have to understand that if you talk to another counsel that there's the sentencing scheduled on the seventh of December, and I'm not going to entertain any motion for continuance . . . [s]o, I'm going to go forward that day. So you just have to be ready." The defendant responded to this warning by telling the court what Gerald had told her concerning the postponement of her presentence investigation interview until she had new counsel. The court indicated that it was not inclined to "get into the details" as to the presentence investigation, because its only purpose in the hearing then before it was to consider defense counsel's motion to withdraw. The court subsequently granted the motion to withdraw.

On December 7, 2007, the defendant appeared before the court with her new counsel, Tina D'Amato, who first presented argument in support of the defendant's posttrial motions for judgment of acquittal and for a new trial. The court denied both motions on the record immediately after they were argued. D'Amato then requested that the defendant's sentencing be continued so that the office of adult probation could interview the defendant with D'Amato in attendance. D'Amato also suggested that the PSI that had been prepared without the defendant's participation was misleading, in that it suggested that she had engaged in delay tactics in connection with the presentence investigation.[6] She further apprised the court that the defendant had retained a mitigation specialist and suggested that it would be improvident for the court to sentence the defendant without the benefit of mitigating evidence that she intended to present to the court with the specialist's assistance.

The court denied the request for a continuance, noting that it previously had established the "ground rules" as to what would happen if the defendant retained new counsel prior to sentencing, including its unwillingness to continue the sentencing to a later date to accommodate new counsel. Addressing D'Amato's assertion that a complete PSI had not been prepared, the court stated that it had researched the relevant case law on that issue in anticipation of the defendant's sentencing, and had determined that a PSI was merely an "aid to the judge," which the court did not need in order to proceed.[7] The court further stated that it had received the PSI that had been prepared without the defendant's input, as had both the state's attorney and D'Amato. The court reiterated, however, that "there is not an absolute right for a defendant to get a PSI," and further stated that it was not going to "entertain any arguments of why the interview was or was not done at the appropriate time." According to the court, "the PSI is something that gets used as a tool by the sentencing judge and . . . the case law is fairly clear . . . [i]t is not an absolute right."[8]

Thereafter, the state, in its sentencing remarks, recommended that the court impose a total effective sentence of ten years incarceration, execution suspended after five years, followed by five years of probation. D'Amato, in turn, stated for the record that she was not prepared for sentencing. On that score, she stated, more specifically, that she was not in a position to advocate on behalf of the defendant because she had "never imagined" that the court would proceed with sentencing on that day. D'Amato remarked, however, that she had spent approximately thirty or forty hours with the defendant reviewing trial transcripts, and on that basis she could provide the court with at least some information about the defendant, including certain details as to the defendant's educational background, her mental health history, and her troubled family life.[9] D'Amato further argued that in fashioning an appropriate sentence, the court should consider the fact that the defendant had made restitution to all of her victims. In conclusion, D'Amato urged the court to impose a suspended sentence.

After hearing D'Amato's remarks and inviting the defendant to address the court—an invitation which the defendant declined—the court set forth its considerations in structuring the defendant's sentence. It stated that it had taken into account the defendant's lack of a previous criminal record, and the nonviolent nature of her crimes, all of which involved identity theft and credit card schemes for the acquisition of expensive cosmetics and jewelry. On the basis of these factors, the court imposed a total effective sentence of ten years incarceration, execution suspended after five years, followed by four years of probation.

This court later affirmed the defendant's convictions on appeal; *State* v. *Bozelko*, 119 Conn. App. 483, 987 A.2d 1102 (2010); and our Supreme Court denied the defendant's petition for certification to appeal. *State* v. *Bozelko*, 295 Conn. 916, 990 A.2d 867 (2010), cert. cenied, U.S. , 134 S. Ct. 1314, 188 L. Ed. 2d 331 (2014). The defendant did not raise any claims concerning her sentencing on direct appeal.[10] Thereafter, the defendant unsuccessfully sought habeas corpus relief from her convictions, claiming ineffective assistance of counsel at her criminal trial and in her posttrial proceedings.[11] See *Bozelko* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-10-4003804-S (August 13, 2013).

On December 20, 2011, as a self-represented party, the defendant filed a motion to correct illegal sentence pursuant to Practice Book § 43-22, alleging that her sentence had been imposed in an illegal manner. In support of her motion, she alleged, inter alia, that the PSI utilized by the sentencing court had been prepared without her input, contrary to the relevant rules of practice, depriving her of the benefit of mitigating evidence

she would otherwise have presented as a basis for imposing a lesser sentence. Additionally, she alleged that the incomplete PSI that was prepared by Gerald and furnished to the court contained material and harmful misrepresentations about her, particularly concerning her purported refusal to participate in the presentence investigation interview. As a result, she claimed, she was sentenced on the basis of inaccurate and unreliable information in violation of her due process rights.

On July 31, 2012, the court, *Arnold, J.*,[12] convened an initial hearing on the defendant's motion to correct. At the outset of hearing, the court raised, sua sponte, the question of whether it had subject matter jurisdiction over the claims presented in the motion and ordered the parties to submit supplemental briefs addressing that question.[13] On January 17, 2013, after the parties had submitted their supplemental briefs on the court's jurisdiction, but without convening another hearing for evidence or argument on that or any other issue raised by the motion, the court issued a written memorandum of decision, in which it dismissed the motion for lack of subject matter jurisdiction, on the basis of its interpretation of our Supreme Court's decision in *State* v. *Parker*, supra, 295 Conn. 825. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant claims that the trial court improperly dismissed her motion to correct illegal sentence.[14] Specifically, she argues that under our Supreme Court's holding in *State* v. *Parker*, supra, 295 Conn. 825, the grounds alleged in her motion to correct are sufficient to invoke the trial court's subject matter jurisdiction under Practice Book § 43-22, and thus she is entitled to a hearing on the merits of her motion. We agree.

The defendant's claim presents a question of law over which our review is plenary. *State* v. *Koslik*, 116 Conn. App. 693, 697, 977 A.2d 275, cert. denied, 293 Conn. 930, 980 A.2d 916 (2009). In *Parker*, our Supreme Court confirmed that the court's jurisdiction is properly invoked under Practice Book § 43-22 when it is alleged that the court's manner of sentencing violates mandatory procedural rules, the result of which is the imposition of a sentence predicated on inaccurate or unreliable information. Id., 837–39. The court explained that, although a trial court generally loses jurisdiction over a criminal case once the execution of a defendant's sentence begins, § 43-22 embodies two established exceptions to the general rule. Id., 837. Under the first such exception, the trial court is authorized to correct a sentence that is illegal, because, inter alia, it exceeds the maximum sentence prescribed by law for the offense in question or its imposition violates the defendant's right not to be placed twice in jeopardy for the same offense. Id., 839. Such a sentence may be corrected by the trial court even after its execution has

begun on the theory that it is void ab initio as a matter of law. Id., 835–36. Under the second exception, the trial court is authorized to correct a sentence that, although not illegal and thus void ab initio, was imposed in an illegal manner. Id., 837. A legal sentence that was imposed in an illegal manner may be corrected after its execution has begun on the theory that "[t]he defendant has a legitimate interest in the character of the procedure which leads to the imposition of the sentence, even if he may have no right to object to a particular result of the sentencing process." (Internal quotation marks omitted.) Id., 839.[15] Such a sentence is deemed to be invalid, and thus voidable upon the filing of a proper motion to correct.

The court in *Parker* explained that the mere allegation of a procedural violation in the sentencing process, standing alone, is not a sufficient basis upon which to invoke the power of the trial court to correct a sentence on the ground that it was imposed in an illegal manner. Id., 846. In addition to alleging a procedural violation, the defendant must allege: first, that the violation in question was committed by the trial court, rather than by her own counsel, and second, that the trial court's challenged violation materially impacted her resulting sentence. Id., 847–50.

To illustrate these requirements more fully, the claim presented in *Parker* can usefully be contrasted with that presented in this court's subsequent decision in *State* v. *Charles F.*, 133 Conn. App. 698, 705, 36 A.3d 731, cert. denied, 304 Conn. 929, 42 A.3d 390 (2012). The defendant in *Parker* alleged that his sentence had been imposed in an illegal manner because he had been deprived of the opportunity to review the PSI considered by the trial court at his sentencing, and thus that he had been deprived of the ability to correct any inaccuracies contained within it. Id., 840. Although the Supreme Court agreed with the defendant that "due process precludes a sentencing court from relying on materially untrue or unreliable information in imposing a sentence"; id., 843; and that the procedural mechanisms set forth in the General Statutes and our rules of practice, specifically, General Statutes § 54-91b, and Practice Book §§ 43-7 and 43-10 (1), are the means by which defendants are protected from such due process violations; id., 845–46; it concluded that the defendant had failed to allege a violation of those mandatory rules by the *sentencing court*, and instead had alleged that his attorney "had failed to review the [PSI] with him or to bring any inaccuracies in the report to the court's attention." Id., 840. Accordingly, the court determined that the defendant's claim was one of ineffective assistance of counsel, which should have been raised in a habeas corpus petition, and not a claim of judicial violation of the defendant's right to be sentenced in a legal manner, which properly could be raised by way of a motion to correct illegal sentence pursuant to Practice

Book § 43-22. Id., 851–52.

Our Supreme Court went on to note, moreover, that aside from alleging a procedural violation, the defendant had failed to advance any claim "that the purported inaccuracies [in the PSI] were materially false and that the sentencing court actually had relied on them in sentencing him." Id., 850. The Supreme Court noted that the sole reference in the record to purported inaccuracies in the PSI was the defendant's suggestion that there were "issues" in the report that he would like to correct. Id., 850 n.19. There was no corollary allegation that any such issues materially impacted the defendant's sentence. Accordingly, the Supreme Court reasoned, the defendant had stated no basis upon which to infer that the purported inaccuracies were relevant to the trial court's sentencing considerations. Id.

In *State* v. *Charles F.*, supra, 133 Conn. App. 702–704, by contrast, this court, in applying the legal principles set forth in *Parker*, rejected the state's contention on appeal that the trial court lacked jurisdiction to consider the defendant's motion to correct, on the basis of the defendant's allegations. In that case, the defendant alleged that he had not received his PSI in timely fashion, and that such untimely receipt of the PSI had caused the sentencing court to rely on inaccurate information in passing sentence upon him. Id., 699–704. This court distinguished such allegations from those made by the defendant in *Parker*, which had failed to explicate any constitutional basis for invoking the trial court's jurisdiction, and noted that the defendant had specifically identified the inaccurate information in his PSI upon which the trial court allegedly relied to his detriment when the challenged sentence was imposed. Id., 703–704. This court determined, however, that although the trial court had jurisdiction, and thus properly entertained the defendant's motion, the defendant had failed to present any evidence showing that the sentencing court gave explicit attention to the inaccurate information as a basis for its sentence. Id, 705. For that reason, this court concluded that the court properly had denied the defendant's motion to correct because he had failed to show any resultant prejudice. Id.,706.

Against this backdrop, we consider the defendant's claim in the present case. Indulging every reasonable presumption in favor of jurisdiction, as we must; see *State* v. *Smith*, 150 Conn. App. 623, 634, 92 A.3d 975 (2014); we review the defendant's pleadings to determine whether they present claims of the sort that, if proved, would establish grounds invoking the court's jurisdiction to correct her sentence.[16] Here, the defendant alleged that the sentencing court violated several mandatory procedural rules, as a result of which it considered and imposed a sentence on the basis of inaccurate and unreliable information, in violation of her due process rights.[17] More specifically, she argued

in support of her motion that the sentencing court's decision to sentence her without a complete PSI, over her objection and in direct violation of Practice Book § 43-3, prejudiced her in two respects: first, it deprived her of the ability to present critical mitigation evidence that would have resulted in the imposition of a lesser sentence upon her, as requested by D'Amato; and second, relatedly, substantial inaccurate information was provided in the incomplete PSI that was furnished to the court. Specifically, she objected to those portions of the PSI that described her purported refusal to cooperate with Gerald in the preparation of the PSI, including her alleged use of "delay tactics" to undermine the sentencing process. The defendant claimed that she was prejudiced by the inclusion of such inaccurate information about her attitude toward the sentencing process in the PSI.

The defendant acknowledged that she did not have a constitutional right to the PSI. See *State* v. *Patterson*, 236 Conn. 561, 564, 674 A.2d 416 (1996) (defendant's right to due process did not include PSI). She argued, however, that she had a right to be sentenced on the basis of accurate and reliable information, including facts related to her personal history and her version of the offenses underlying her convictions.[18] The defendant identified in her motion and memorandum several "mitigating factors" that she would have put before the court, had she been able to participate in the presentence investigation interview with counsel present, as is provided for under our rules of practice. Those claimed factors included: (1) her family dysfunction; (2) the fact that she was illegally conserved in 2005 and "forcibly medicated and incorrectly diagnosed for a number of years"; (3) the fact that she "was effectively denied treatment through the incorrect diagnoses"; and (4) the fact that she subsequently received a correct diagnosis, depression, and she was now being treated with the correct medication. The defendant further argued that her case "underscore[d] the importance of mitigation evidence to be presented at sentencing because [she] was not subject to any mandatory minimum sentence."

Finally, the defendant argued that her inability to set forth such evidence was further exacerbated by the information that was presented in the PSI, namely, the alleged misrepresentation pertaining to her "refusal to participate" in the presentence investigation interview. She argued that her supposed "delay tactics," as reported by Gerald in the PSI, not only consumed the court's attention at sentencing and resulted in its procedurally unreasonable conduct, but also that she made every effort to correct that information, to no avail.[19] In sum, she contended that she was "sentenced on the basis of improper factors [and] erroneous information," and, thus, "the manner in which her sentence was imposed was illegal."

On the basis of our review of the defendant's allegations, we conclude that the defendant, in accordance with the rule set forth in *State* v. *Parker*, supra, 295 Conn. 846–47, alleged procedural violations by Judge Cronan that she asserted resulted in the court's reliance on "unreliable and inaccurate information" in determining her sentence. Moreover, the defendant was entitled to file and prosecute her motion to correct under Practice Book § 43-22, and the court had subject matter jurisdiction to hear and decide such claims. We note, consistent with this court's decision in *Charles F.*, that in order for the defendant to ultimately prevail on her claims, she will need to prove the court's actual reliance on misinformation, which will require a showing that the court gave "specific consideration" or weight to the unreliable or inaccurate information she complains of in imposing her sentence. *State* v. *Charles F.*, supra, 133 Conn. App. 705.

## II

Having concluded that Judge Arnold erred in dismissing the defendant's motion to correct illegal sentence for lack of subject matter jurisdiction, we next consider the appropriate remedy. The defendant maintains that her case should be remanded to the trial court for a hearing on the claims underlying her motion. The state concedes that the trial court had subject matter jurisdiction over those claims, but argues that no remand is necessary because the court actually went on to deny the defendant's motion on the merits. We disagree. Once the court determined that it lacked subject matter jurisdiction, it had no authority to decide the case, and did not purport to do so. See *State* v. *Abraham*, 152 Conn. App. 709, 724, 99 A.3d 1258 (2014) (rejecting state's claim that court denied defendant's motion to correct on ground that court had no authority to act once it concluded it lacked subject matter jurisdiction). The defendant is entitled to a hearing on the merits of her motion.

The judgment is reversed and the case is remanded for a hearing on the defendant's motion to correct illegal sentence.

In this opinion the other judges concurred.

[1] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[2] The defendant was convicted of fourteen counts contained in four separate files. In docket number CR-05-128445, the defendant was convicted of attempt to commit larceny in the first degree in violation of General Statutes §§ 53a-122 and 53a-49; identity theft in the first degree in violation of General Statutes § 53a-129b; attempt to commit illegal use of a credit card in violation of General Statutes §§ 53a-128d and 53a-49; and forgery in the third degree in violation of General Statutes § 53a-140. In docket number CR-05-128811, the defendant was convicted of larceny in the third degree in violation of General Statutes § 53a-124; identity theft in the third degree in violation of General Statutes § 53a-129d; illegal use of a credit card in violation of § 53a-128d; and forgery in the third degree in violation of § 53a-140. In docket number CR-05-129108, the defendant was convicted of attempt to commit

larceny in the fifth degree in violation of General Statutes §§ 53a-125a and 53a-49; attempt to commit illegal use of a credit card in violation of § 53a-128d and 53a-49; and identity theft in the third degree in violation of § 53a-129d. In docket number CR-05-129107, the defendant was convicted of larceny in the fifth degree in violation of § 53a-125a; illegal use of a credit card in violation of § 53a-128d; and identity theft in the third degree in violation of § 53a-129d.

[3] General Statutes § 54-91a provides in relevant part: "No defendant convicted of a crime . . . the punishment for which may include imprisonment for more than one year, may be sentenced, or the defendant's case otherwise disposed of, until a written report of investigation by a probation officer has been presented to and considered by the court. . . ."

[4] Practice Book § 43-3 provides in relevant part: "If the defendant is convicted of a crime . . . the punishment for which may include imprisonment for more than one year, the judicial authority shall order a presentence investigation. . . ."

[5] The record reveals that the defendant had filed a legal malpractice action against her trial counsel.

[6] D'Amato also requested that the court assign a different probation officer from outside the jurisdiction to complete the presentence investigation on the basis of what she claimed to be Gerald's personal bias against the defendant.

[7] Specifically, the court cited *State* v. *Windley*, 95 Conn. App. 62, 68–69, 895 A.2d 270, cert. denied, 278 Conn. 924, 901 A.2d 1222 (2006), in which this court held that the trial court erred by failing to order a PSI, but concluded that the error was harmless in light of the record, which revealed that the court had sentenced the defendant just five days after it had found that he was a third time offender under General Statutes § 14-277a (g) (3), and that the defendant failed to identify any relevant information that would have been contained in the PSI that would have resulted in a different sentence.

[8] Following the court's remarks, D'Amato requested that the court recuse itself from further proceedings in the case, and the request was denied by the court.

[9] D'Amato stated that she did not have the full details regarding the defendant's medical history because the defendant's former trial counsel was in possession of the defendant's medical records; specifically, she stated that the defendant had seen "ten or fifteen doctors," and that she did not have the benefit of the "boxes" of medical records that had been given to trial counsel.

[10] "[A] defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to [Practice Book] § 43-22 with the judicial authority, namely, the trial court." *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006).

[11] In her habeas petition, the defendant alleged that D'Amato rendered ineffective assistance of counsel by failing to provide the court with a sentencing memorandum and by being unprepared for sentencing. The habeas court disagreed, finding that D'Amato "performed admirably given the severe time constraints under which she labored." *Bozelko* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-10-4003804-S (August 13, 2013).

[12] The matter was assigned to Judge Arnold when Judge Cronan, who had presided over the defendant's trial and sentencing, recused himself from all proceedings involving the defendant after she filed a judicial complaint against him.

[13] Although the defendant filed the motion to correct in a self-represented capacity, she was represented by counsel at the July 31, 2012 hearing and counsel filed the subsequent memorandum of law addressing the jurisdictional issue.

[14] The state argues that the self-represented defendant failed to brief her claim adequately, and thus abandoned it. We recognize that the defendant's brief lacks precision and fails to provide a thorough analysis of the relevant legal authorities, however, "[i]t is our policy to give leeway to [self-represented] litigants regarding their adherence to the rules of this court." *In re Britanny J.*, 100 Conn. App. 329, 330, 917 A.2d 1024 (2007). "The modern trend . . . is to construe pleadings broadly and realistically . . . . The courts adhere to this rule to ensure that [self-represented] litigants receive a full and fair opportunity to be heard, regardless of their lack of legal education and experience." *Mourning* v. *Commissioner of Correction*, 120 Conn. App. 612, 625–26, 992 A.2d 1169, cert. denied, 297 Conn. 919, 996 A.2d 1192 (2010).

[15] Prior to *Parker*, sentences imposed in an illegal manner had been held

to include those that are "within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." *State* v. *McNellis*, 15 Conn. App. 416, 444, 546 A.2d 292, cert. denied, 209 Conn. 809, 548 A.2d 441 (1988). *Parker* clarified that the procedural rights attendant to sentencing, the violation of which may render a sentence invalid, include not only those rights afforded under federal due process and federal law, as previously delineated in *McNellis*, but also encompass those procedures mandated by state law that are necessary to ensure fundamental fairness in sentencing. *State* v. *Parker*, supra, 295 Conn. 839–40. Thus, the grounds for correction cited in *McNellis* "are not exhaustive and the parameters of an invalid sentence will evolve." Id., 840.

[16] "Construction of the effect of pleadings is a question of law and, as such, our review [of the defendant's allegations] is plenary." *Ross* v. *Forzani*, 88 Conn. App. 365, 368, 869 A.2d 682 (2005).

[17] The defendant alleged that the court's manner of sentencing her violated the following rules of practice: First, she claimed that the court violated Practice Book § 43-3 "by controverting the rule that PSI[s] are mandatory, by claiming the defendant had no right to the PSI and, by extension, no right to participate in the [presentence investigation interview]." Second, she claimed that the court violated Practice Book § 43-4 "by not inquiring about the defendant's attitude towards alternate incarceration." Third, she claimed that the court violated Practice Book § 43-5, by denying her the right to participate in the presentence investigation interview with D'Amato present. Fourth, she claimed that the court violated Practice Book §§ 43-10 and 43-11 by not allowing her to present evidence as to Gerald's misrepresentation as to her willingness to participate in a presentence investigation interview or other mitigating evidence. Fifth, she claimed that the court violated Practice Book § 43-13, which allows the defendant's counsel to be familiar with the PSI, as D'Amato had the PSI copy for fewer than forty-eight hours before sentencing. Finally, she claimed that the court violated Practice Book § 43-14, which allows for correction of any inaccuracies in the PSI.

[18] Additionally, the defendant argued that a presentence investigation interview was the only viable means by which to advance evidence on her behalf, particularly because she intended to pursue an appeal of her convictions.

[19] Our review of the sentencing hearing transcript reveals that the court stated that it was "not going to get into or entertain any arguments of why the interview was or was not done at the appropriate time."