******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The defendant, who had been convicted of ten felonies and four misdemeanors in connection with four separate incidents involving larceny, attempt to commit larceny, identity theft, forgery, illegal use of a credit card and attempt to commit illegal use of a credit card, appealed to this court from the trial court's denial of her motion to correct an illegal sentence. In her motion, the defendant alleged that the presentence investigation report utilized by the sentencing court had been prepared without her input, and that because the incomplete report contained material and harmful misrepresentations about her, including her purported lack of cooperation in the preparation of the report by refusing to participate in a presentence investigation interview, she was sentenced in an illegal manner because her sentence was based on inaccurate and misleading information in violation of her due process rights. *Held* that the trial court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence: even if the defendant's probation officer had misrepresented the defendant's unwillingness to assist in the preparation of the presentence investigation report, the defendant failed to establish either that such misrepresentation was material to her sentencing or that it was actually relied on by the sentencing court, and, therefore, the trial court did not err in concluding that the defendant had failed to prove that the sentencing court gave specific weight or consideration to inaccurate or misleading information when it imposed its sentence, and although the defendant claimed that it was impossible for her to prove what portions of the report the sentencing court actually relied on because she was not permitted to subpoena the judge to testify at the evidentiary hearing, the defendant failed to file a motion for articulation with respect to those portions of the report considered and relied on by the sentencing court; moreover, the defendant was not precluded from presenting mitigating evidence to the court, as the defendant and her counsel were afforded nearly twenty-six hours to review the substance of the report and discussed a number of mitigating factors with the sentencing court, including the defendant's background, her advanced education, her full restitution to each of the victims and her role as a caregiver for her sick father, and she was afforded an opportunity to address the court and to present additional mitigating evidence, but declined to do so.

Argued May 16—officially released August 15, 2017

*Procedural History*

Substitute information, in the first case, charging the defendant with the crimes of attempt to commit larceny in the first degree, identity theft in the first degree, attempt to commit illegal use of a credit card and forgery in the third degree, and substitute information, in the second case, charging the defendant with the crimes of larceny in the third degree, identity theft in the third degree, illegal use of a credit card and forgery in the third degree, and substitute information, in the third case, charging the defendant with the crimes of attempt to commit larceny in the fifth degree, attempt to commit illegal use of a credit card and identity theft in the third degree, and substitute information, in the fourth case, charging the defendant with the crimes of larceny in the fifth degree, illegal use of a credit card and identity theft in the third degree, brought to the Superior Court

in the judicial district of Ansonia-Milford, geographical area number five, where the cases were consolidated; thereafter, the matter was tried to the jury before *Cronan, J.*; verdicts and judgments of guilty, from which the defendant appealed to this court, which affirmed the judgment of the trial court; subsequently, the Supreme Court denied the defendant's petition for certification to appeal; thereafter, the court, *Arnold, J.*, dismissed the defendant's motion to correct an illegal sentence, and the defendant appealed to this court, which reversed the judgment of the trial court and remanded the case for a hearing on the defendant's motion to correct an illegal sentence; subsequently, the court, *Arnold, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Chandra Bozelko*, self-represented, the appellant (defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *Kevin D. Lawlor*, state's attorney, *Paul O. Gaetano*, supervisory assistant state's attorney, and *Angela R. Macchiarulo*, senior assistant state's attorney, for the appellee (state).

*Opinion*

SHELDON, J. This case returns to this court following our reversal of the trial court's ruling[1] that it lacked subject matter jurisdiction over the defendant's motion to correct an illegal sentence, and the resulting remand to the trial court, *Arnold*, *J.*, for further proceedings on the merits of the defendant's motion. *State* v. *Bozelko*, 154 Conn. App. 750, 766, 108 A.3d 262 (2015). The defendant claimed that the sentencing court, *Cronan*, *J.*, sentenced her in an illegal manner by relying on misleading or inaccurate information set forth in her presentence investigation report (PSI). Id., 763–64. On remand, Judge Arnold denied the defendant's claim, finding that the defendant had failed to present any evidence showing that the sentencing court had relied on misleading or inaccurate information in imposing her sentence. On appeal, the defendant challenges that determination. We affirm the judgment of the trial court.

The lengthy procedural history of this case was previously set forth by this court, inter alia, on the defendant's direct appeal from her underlying convictions; see *State* v. *Bozelko*, 119 Conn. App. 483, 485–87, 987 A.2d 1102, cert. denied, 295 Conn. 916, 990 A.2d 867 (2010), cert. denied,      U.S.     , 134 S. Ct. 1314, 188 L. Ed. 2d 331 (2014); and in our decision remanding this matter back to the trial court. *State* v. *Bozelko*, supra, 154 Conn. App. 752–58. Following our decision remanding the matter back to the trial court, an evidentiary hearing on the defendant's motion to correct was held on July 13, 2015, and February 1, March 7, and March 28, 2016. In that hearing, Judge Arnold received testimony and documentary evidence as to the circumstances in which the defendant's December 7, 2007 sentencing took place.[2] Thereafter, on June 23, 2016, the court issued its written memorandum of decision denying the defendant's motion to correct an illegal sentence.

The following facts are set forth in the court's written memorandum of decision. "The defendant . . . was convicted following a jury trial involving [ten felonies and four misdemeanors based upon her involvement in four separate incidents involving larceny or attempt to commit larceny, identity theft, illegal use of a credit card or attempt to commit illegal use of a credit card, and forgery]. On December 7, 2007, following the preparation of a [PSI] by the Department of Adult Probation, the defendant was sentenced by Judge Cronan . . . [to] a total effective sentence of ten years, [execution] suspended after . . . five years, with four years of probation following her release. . . . The defendant, who is self-represented, filed a motion to correct an illegal sentence on February 14, 2012. She concedes that the actual sentence . . . was not illegal, but rather, the sentence was imposed in an illegal manner. . . . Spe-

cifically, she claims that the [PSI] utilized by the court at her sentencing, was compiled without her participation, and . . . contained a material misrepresentation . . . because she was 'tricked out' of participation in the report's preparation by the probation officer, who reported to the court that the defendant refused to participate in preparing the report.[3] The defendant argues that this 'material misrepresentation' by the probation officer was prejudicial to the defendant." (Footnotes altered.)

"A review of the December 7, 2007 sentencing transcript revealed that . . . [the defendant's counsel] Attorney [Tina] D'Amato . . . requested a continuance of the defendant's sentencing hearing, stating that the defendant had not had the opportunity to meet with the probation officer and complaining that probation officer [Lisa] Gerald was biased toward the defendant. . . . The [sentencing] court noted that it was in possession of a [PSI] . . . [but] indicated it was not going to hear argument as to why the defendant's interview was or was not done on time, providing an indication that this was not a primary concern or consideration of the court in imposing a sentence. . . .

"In the course of the state's sentencing presentation, the state summarized the charges that the defendant had been convicted of and . . . [noted that, while] the defendant faced a maximum incarceration in excess of one hundred years, the state requested a total effective sentence of ten years [of] incarceration, execution suspended after . . . five years, followed by five years [of] probation supervision. Defense counsel then informed the court [that] she was not ready for sentencing, as she didn't know enough about the defendant to advocate for her.[4] Counsel did [however] admit that she had read the transcripts of the defendant's court proceedings . . . [and counsel] then related facts regarding the defendant's family background; her troubled relationship with her parents and involuntary hospitalization of the defendant by her parents. Counsel informed the court that the defendant had been diagnosed with schizophrenia, bipolar disorder and personality disorder; [and] had been forced to take antipsychotic medications. . . . Counsel informed the court that full restitution for her crimes had been accomplished; and that the defendant provided care for her [sick] father." (Footnote added.) "Counsel then reiterated that the defendant had been a student at Fordham University and was a graduate of Princeton University. The court then inquired if the defendant wished to make a statement. The defendant declined. In doing so, the defendant did not address the contents of the [PSI]; did not [raise] any claimed inaccuracies or misrepresentations; and did not present the court with further information in mitigation.

"The [sentencing] court commenced its sentencing

comments by noting the defendant had been found competent to stand trial . . . . The court noted that the defendant was an intelligent person of privilege compared to many defendants who [had] been sentenced by the court. . . . The court noted that it was aware of the defendant's lack of a previous criminal record, and that the offenses for which the defendant was convicted were not crimes of violence. Nonetheless, the court stated that the crimes regarding identity theft and credit card fraud were crimes [that] the court could not take lightly. . . . The trial court . . . then imposed the sentences which were noted earlier, herein." (Citation omitted; footnote omitted.)

"[I]n its original [memorandum of decision on the motion to correct, the trial court] found that other than arguing that the [sentencing] court did not follow the proper procedural rules,[5] the defendant had not demonstrated how the court's error caused her prejudice with regard to the sentence imposed. . . . [T]he defendant never claimed that the [sentencing] court refused to consider her claims of any disputed facts in the [PSI]. It appears from the review of the record that the defendant's claims of inaccuracies are related solely to whether . . . she refused to cooperate in the preparation of the [PSI]. While her counsel addressed this issue, the defendant, despite being given the opportunity to do so at her sentencing, declined to comment or make a statement to the [sentencing] court. Additionally, there is no evidence that the court considered this issue when structuring or imposing the defendant's sentence." (Citations omitted; footnote added.) "Neither defense counsel, the defendant, [nor] anyone else alerted the [sentencing] court to any allegedly inaccurate information in the [PSI] other than the alleged 'misrepresentation' that the defendant refused to cooperate [in completing the PSI] . . . ."

"Having made these foregoing findings . . . the court review[ed] the evidence presented by the defendant at the evidentiary hearing conducted at the direction of the Appellate Court . . . to determine if the trial court . . . relied on inaccurate or misleading information when sentencing the defendant. The court heard testimony from Chief Probation Officer Lisa Gerald on July 13, 2015. . . . Gerald confirmed that the defendant was not refusing to cooperate in completing the PSI process, but was seeking a delay until the defendant could secure the services of a new attorney. . . . Gerald . . . did not believe the defendant was engaging in delaying tactics, but [she] stated [that] as a probation officer she had no authority to unilaterally order a continuance of the defendant's sentencing date. Therefore, she continued to write a partial PSI, using only information that was available to her from sources other than the defendant. . . . [A]n examination of the PSI . . . indicates that the report copy was faxed to . . . D'Amato on December 6, 2007, at 12:07 p.m." (Cita-

tion omitted.)

"D'Amato testified . . . that the defendant retained her services for the purposes of the sentencing hearing. She stated that she filed a motion for continuance of the sentencing hearing as she was not prepared to go forward. . . . Nonetheless, D'Amato stated that she was, in fact, prepared for the defendant's sentencing on December 7, 2007, although she had not planned on going forward. She also stated [that] she had no plan to present mitigation witnesses or mitigating circumstances. She knew [however] of the defendant's intent to hire Clinton Roberts, a mitigation specialist, because she . . . had spoken to Roberts." (Footnote omitted.)

"On March 7, 2016, the court heard testimony from . . . Roberts who was called as a witness by the state. . . . Roberts stated that . . . [he was given payment by the defendant's] family on November 24, 2007 . . . . However, his acceptance of the payment was contingent on the defendant being able to obtain a continuance of her [December 7, 2007] sentencing date . . . [because] it would take six to eight weeks to complete a sentence mitigation report for the defendant . . . . When the defendant was denied a continuance of her sentencing . . . Roberts offered to remit the payment back to the family . . . [but was] advised that the family wished to retain his services for postsentencing proceedings . . . . Roberts further testified that once he completes a mitigation report, he testifies at the sentencing hearing only if defense counsel requests that he do so and if the court agrees to it. The information contained in a sentencing mitigation report prepared by Roberts is similar to that of a [PSI] . . . . His sentencing mitigation report would contain information regarding family and personal data, educational background, employment history, and a summary of physical and mental health issues, substance abuse issues, and family relation issues. . . . When asked by the court how his report differs from a [PSI], Roberts replied that he tries 'to get a bit deeper' into a person's background . . . but as he had little information about the defendant, he could not testify regarding any issues about this defendant." (Footnotes omitted.) "At no time did Roberts offer any testimony regarding specific information about the defendant, favorable or otherwise, that would have been presented at the sentencing . . . had a continuance of the sentencing been granted."

"In remanding this matter . . . the Appellate Court noted that in order for the defendant to ultimately prevail on her claims, she will need to prove the [sentencing] court's actual reliance on misinformation, which will require a showing that the court gave 'specific consideration' or weight to the unreliable or inaccurate information she complains of in imposing her sentence. . . . The defendant has failed to sustain that burden. None of the evidence presented and received at the

hearing held by this court supports the defendant's position that the sentencing court relied on unreliable or inaccurate information when imposing the defendant's sentence on December 7, 2007. . . . The defendant provided no evidence that Judge Cronan relied on any misinformation or misrepresentation regarding the defendant's delay in meeting with . . . Gerald in the preparation of the [PSI]. There is also no indication that Judge Cronan imposed a more severe sentence on the defendant due to the defendant's desire to postpone her meeting with Gerald until the defendant obtained the services of new counsel. . . .

"D'Amato confirmed that she had reviewed the trial transcripts and spent thirty to forty hours interviewing the defendant and reviewing the defendant's trial. At the sentencing, [D'Amato] presented evidence that the defendant: (1) assisted in caring for her ill father; (2) had no prior criminal record or arrests; (3) had previously been institutionalized and medicated for mental health issues; (4) made full restitution to the victims; (5) graduated from Princeton University; and (6) attended Fordham Law School. . . . The defendant has not raised any issue that this information [presented] to the court was a misrepresentation or inaccurate in any way."

After making the foregoing findings of fact, the court ruled that the defendant had failed to carry her burden of proof, and thus it denied her motion to correct an illegal sentence. This appeal followed.

On appeal, the defendant claims that the trial court abused its discretion in denying her motion to correct an illegal sentence. More particularly, the defendant argues that, in deciding upon her sentence, Judge Cronan relied on what she claims to have been material misrepresentations in the PSI, including the statements that she had "[refused] to cooperate with [Gerald]" in preparing the PSI, and that the absence of certain portions of the report were "a consequence of her decision [not to cooperate]." The defendant dedicates a substantial portion of her brief to explaining why Gerald's comment about her noncooperation with the preparation of the PSI was misleading and to denying the suggestion in the report that, by not cooperating, she was engaging in delay tactics. The defendant further argues that "[t]he only way that the sentencing court did not consider Gerald's material misrepresentations in the [PSI] was to disregard the [PSI] altogether, effectively denying [the defendant an] opportunity to speak in mitigation of her sentence." On that basis, the defendant argues that Judge Arnold erred in finding that the sentencing court had not relied on misleading or inaccurate information when imposing its sentence upon her. We are not persuaded.

"We begin by setting forth our standard of review. [A] claim that the trial court improperly denied a defen-

dant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Charles F.*, 133 Conn. App. 698, 704–705, 36 A.3d 731, cert. denied, 304 Conn. 929, 42 A.3d 390 (2012).

"[D]ue process precludes a sentencing court from relying on materially untrue or unreliable information in imposing a sentence." *State* v. *Parker*, 295 Conn. 825, 843, 992 A.2d 1103 (2010). "To prevail on such a claim as it relates to a [PSI], [a] defendant [cannot] . . . merely alleg[e] that [her PSI] contained factual inaccuracies or inappropriate information. . . . [She] must show that the information was *materially* inaccurate and that the [sentencing] judge *relied* on that information. . . . A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, [bases] its sentence at least in part on it, or gives specific consideration to the information before imposing sentence." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Charles F.*, supra, 133 Conn. App. 705; see also *State* v. *Parker*, supra, 844 ("[t]he mere presence of . . . inaccurate information in a [PSI] does not constitute a denial of due process" [internal quotation marks omitted]).

After thoroughly reviewing the record in this case, we conclude that Judge Arnold did not err in determining that the defendant failed to prove that the sentencing court gave specific weight or consideration to inaccurate or misleading information when it imposed its sentence upon her. Although the defendant spent substantial portions of both the evidentiary hearing and her brief attempting to prove that she had not engaged in delay tactics or refused to take part in a PSI interview, such efforts were in vain. Even assuming that Gerald misrepresented the defendant's unwillingness to assist in the preparation of the PSI, the defendant failed to establish either that such misrepresentation was *material* to her sentencing or the sentencing court *actually relied on* that misrepresentation.

A review of the sentencing transcript clearly demonstrates that the sentencing court "did not reference or otherwise indicate that it was relying on the [PSI's] assertion that the defendant did not wish to include an offender's version [in the PSI]." *State* v. *Charles F.*, supra, 133 Conn. App. 705. Instead, Judge Cronan merely stated: "In trying to structure a penalty I considered the lack of a previous record and that these offenses are not crimes of violence that we often see here, but they are, in fact, offenses that the Connecticut

General Assembly said deserve, in ten cases, to be treated as a felony . . . . I cannot take this type of conduct lightly . . . . So as I said, I just shook my head and attempted in structuring a sentence to [be] fair, fair to the victims, fair to society, and fair to [the defendant]." The defendant concedes that those portions of the PSI that concerned her lack of a prior criminal history and the nonviolent nature of her offenses of conviction were accurate and did not contain any misrepresentations. The defendant did not and could not argue that the court expressly stated that it considered or gave specific weight to the fact that the defendant had not submitted to a PSI interview with Gerald.

Nonetheless, the defendant contends that the trial court must have relied upon the fact that she did not participate in the PSI interview when it sentenced her. She argues, without any legal citation, that the sentencing court either did not rely on *any portion* of the PSI or it relied on those portions of the PSI that contained misrepresentations. We attach no weight to such an argument, as the defendant overlooks a third, and frankly more obvious, possibility, to wit: that while the court relied on those uncontested portions of the PSI which it discussed on the record, including her lack of a prior criminal history and the nature of the offenses here at issue, it did not rely on other portions of the PSI of which it made no mention. It was the defendant's burden to prove that the court actually relied on or gave specific weight to inaccurate information, but she failed to carry that burden.

Although the defendant asserts that it was impossible for her to prove what portions of the PSI Judge Cronan actually relied on because she was not permitted to subpoena the judge to testify at the evidentiary hearing, we are cognizant of the fact that the defendant failed to file a motion for articulation with respect to those portions of the PSI considered and relied on by the sentencing court. See *State* v. *Koslik*, 116 Conn. App. 693, 705, 977 A.2d 275 (noting that defendant failed to file motion for articulation regarding decision of sentencing court or decision denying motion to correct illegal sentence), cert. denied, 293 Conn. 930, 980 A.2d 916 (2009). We further reject the defendant's argument that, by virtue of the sentencing court's remark that it was not going to entertain arguments as to why the defendant did not participate in the PSI interview, the court effectively precluded her from presenting any mitigating evidence at sentencing. Not only were the defendant and her counsel afforded nearly twenty-six hours to review the substance of her eleven page PSI, but also her counsel discussed a number of mitigating factors with the sentencing court, including, inter alia: the defendant's background; her advanced education; her full restitution to each of the victims; and her supportive role in her family, caring for her sick father. Moreover, she was afforded an opportunity to address

the court and present additional mitigating evidence, but declined to do so. These factors amply demonstrate that the defendant was not precluded from presenting mitigating evidence to the court. See *State* v. *Charles F.*, supra, 133 Conn. App. 705 n.6.

Because the trial court was not presented with any evidence demonstrating that the sentencing court considered, much less actually relied on, the portion of the defendant's PSI indicating that she had refused to submit to a PSI interview, Judge Arnold, as in *State* v. *Charles F.*, supra, 133 Conn. App. 706, reasonably could have found "that the sentencing court did not rely on inaccurate information and that the defendant's sentence was therefore not imposed in an illegal manner." We, therefore, conclude that the trial court did not abuse its discretion by denying the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The trial court ruled in four consolidated cases. *State* v. *Bozelko*, Superior Court, judicial district of Ansonia-Milford, geographical area number five at Derby, Docket Nos. CR-050128445-S, CR-050129108-S, CR-050128811-S, CR-050129107-S (January 17, 2013).

[2] Judge Cronan recused himself from the postsentencing hearings after the defendant filed a judicial grievance against him.

[3] The circumstances surrounding the defendant's participation in the PSI have been discussed previously by this court. See *State* v. *Bozelko*, supra, 154 Conn. App. 753–54. The defendant takes issue with the following portion of the PSI: "On November 21, 2007, this officer received two voicemail messages from the offender in which she alleged that the [court] informed her that she 'was refusing to cooperate with the PSI.' This officer clarified the issue and informed the offender that due to her decision regarding her [PSI] interview this office was left with insufficient time to complete an investigation, a consequence of her decision. This officer, once again, directed the offender to appear in [c]ourt as directed."

[4] D'Amato was retained by the defendant shortly before sentencing.

[5] On appeal, the defendant claims that the manner in which she was sentenced violated several sections of the Practice Book. During oral argument before this court, however, the defendant conceded that the scope of our remand order was narrow: whether there was evidence demonstrating that the sentencing court relied on materially misleading or inaccurate information when it structured her sentence. She similarly conceded to the trial court that the purpose of the evidentiary hearing was to afford her an opportunity to prove that the sentencing court relied on inaccurate information when structuring her sentence. In accordance with the limited scope of our remand order, we decline to address the defendant's claims that the sentencing procedure violated various provisions of our rules of practice.